## BAXTER v. CAMPBELL.

1. In an action against a physician for negligence, although the testimony is conflicting on all material points, it must be assumed on appeal that every allegation of negligence and want of skill stands proved by the verdict for plaintiff.

2. In order to justify an imputation of malice, so as to authorize punitive damages, the injury must have been wrongfully and intentionally done, in a spirit of mischief, and partake of a criminal nature; and Rev. Civ. Code §2292, provides for exemplary damages only "when defendant has been guilty of oppression, fraud, or malice, actual or presumed."

3. In an action against a surgeon for malpractice, where compensatory damages alone were claimed, and there was no evidence from which malice on the part of the defendant could be presumed, it was error to instruct that the jury might award punitive damages,

(Opinion filed Dec. 2, 1903.)

Appeal from circuit court, Codington county, Hon. JULIAN BENNETT, Judge.

Action by Raymond B. Baxter against R. F. Campbell. From a judgment for plaintiff, defendant appeals. Reversed.

*W. S. Glass* and *C. X. Seward,* for appellant.

*A. Sherin,* for respondent.

FULLER, J. The complaint in this action for damages states, in substance, that the defendant, a physician and surgeon, was employed by plaintiff to set and heal the bones of his left leg, broken between the knee and ankle on the 26th day of November, 1901; "that the defendant so carelessly, negligently and unskillfully" performed the service that it became necessary in the month of May, 1902, to employ a different physician and surgeon, at the expense of $200, and to his damage in that amount; "that by reason of said careless, negligent, and unskillful manner of setting, treating, and caring for said leg, it has not healed, and this plaintiff has been unable to use it since it was first broken, and the plaintiff was made sick and kept from attending to his business since November, 1901 and is still disabled from attending to his business or from doing any bodily work, to the damage of this plaintiff in the sum of eight hundred dollars; that by reason of said careless, negligent, and unskillful manner of setting. treating and caring for said leg, this plaintiff has suffered extreme pain, both of body and mind, and was greatly injured in bodily health, to his damage in the sum of four thousand dollars. Wherefore plaintiff demands judgment against defendant in the sum of five thousand dollars damages, as set forth in this complaint, for expenses, loss of time, and suffering, and that a body execution may issue in said case in case of default of defendant to pay

any judgment that may be recovered against him, and for his costs, and for such other and further relief as to the court shall seem just." Answering the defendant admits the employment, but denies the averment of negligence, want of care and skill, and alleges that the injury complained of resulted wholly from the negligence of plaintiff. The jury returned a verdict for $3,800 in favor of plaintiff, and the defendant appeals from a judgment accordingly entered and from an order over-ruling a motion for a new trial.

While the complaint is limited to a claim of damages in the way of compensation for "expenses, loss of time, and suffering" arising from the alleged negligent and unskillful treatment of the case, and there is nothing in the testimony tending in the slightest degree to sustain an inference of malice, the court instructed the jury as follows: "Should the defendant's conduct show a willful and malicious want of care and skill, the jury may allow as damages not only the actual damage proved, but such exemplary damages or smart money as, in their judgment, may be just and proper as a punishment to the defendant, in view of all the facts and circumstances proved on the trial." According to the evidence introduced on the part of appellant. the patient was treated with the utmost care and according to the present practice of the best surgeons; but, if respondent's testimony is true, the method employed was that of 25 years ago, and not approved at the present time. To the physician and surgeon who performed the second operation, and testified in respondent's behalf the following hypothetical question was propounded: "I will ask you, doctor, if in the case of a compound fracture of the lower limb, as in the case of Baxter, if both the bones were broken and protruding

through the flesh and skin, if the bone is simply pressed back to its place by the physician or surgeon, and the leg tied up, without sterilizing or cleansing in any manner, and the leg left for two weeks without being cleansed in any manner, I will ask you if, under the present modern methods of surgery that would be the proper treatment of a fracture of that character?" The above question was fairly within the testimony of respondent, and the witness being more familiar with the case than any other expert called in his behalf, we give the complete answer, as follows: "If I were treating a case of that kind, if there was any chance for infection, I would sterilize the wound thoroughly before replacing the bone. Yes; I believe that would be the method of modern surgery. If a wound is thoroughly cleansed, and if every particle of foreign matter is out of it, and there are no broken bones, and it is replaced, the bone will unite and heal. It would depend somewhat on the fracture and the individual, but a fracture of this kind would be at least from six weeks to two months in healing. The present surgical practice for treating fractures of this character is to irrigate the wound with antiseptics. It would not be proper treatment if the pus was allowed to flow for a week, and the wound not being irrigated or cleansed. If the pus was permitted to flow for a week without the wound being irrigated or cleansed, the effect on the patient's leg would depend somewhat on the provision for the exit for the pus from the wound. Under the present practice, if the opening is not large enough for the pus to find free exit, the opening should be enlarged. Yes; if a man's leg was broken in two places, as in this case, and it was left two weeks without sterilizing or irrigation, and pus was permitted to remain there

and to be flowing from the wound for a week, it is my opinion that it would produce the result in which I found Baxter's leg, if it had been allowed to hold that pus in there. When a leg is fractured with a compound fracture between the knee and the ankle, as in the case of Baxter, with the bones protruding under the flesh and skin, I would replace the bones after cleansing the wound, and replace the bones as near their normal position as possible, leaving the wound so as to permit the pus to have a chance to escape."

Although the testimony is conflicting upon all material points, it must be assumed that every allegation of negligence and want of skill stands proved by the verdict. but there is nothing in the conduct of appellant from which malice may be presumed. In order to justify the imputation of malice, within the rule of punitive damages, the injury must have been conceived in a spirit of mischief, and partake of a criminal or wanton nature. City of Chicago v. Martin, 95 Am. Dec. 590, and cases cited in the notes. As applied to torts, an act, in order to be malicious, must be wrongful, and intentionally done, with an evil mind, and wish to injure another. Bouvier's Law Dict.; Picket and wife v. Creek, 20 Wis. 358. So far as the writer's research has extended, the damages awarded in actions for malpractice are compensatory, and our statute provides for exemplary damages only as a means of punishment "when the defendant has been guilty of oppression, fraud or malice, actual or presumed." Rev. Civ. Code, § 2292. Malice is defined to be a "wicked intention to do an injury." "In trespass, when the injury has been wanton or gross and outrageous. Not merely the doing of an unlawful or injurious act, but an act conceived in a spirit of mischief or of criminal

indifference to civil obligation.'' Anderson's Law Dict. As exemplary damages are penal in character, and malice an ingredient of crime, no one should be adjudged to pay ''smart money'' without first being accused of something malicious, and given an opportunity to defend. Under the pleadings and the proof, there was nothing to warrant exemplary damages, and it was erroneous to give an instruction upon so dangerous a proposition not in the case. People v. Oldham, 111 Cal. 648, 44 Pac. 312; MeKeon v. Citizens' Ry. Co., 42 Mo. 79; Philadelphia, etc., Ry. Co. v. Quigley, 21 How. 202, 16 L. Ed. 73. The complaint was drawn strictly upon the theory of compensation, and at no time during the trial was there an intimation that anything more would be claimed. When exemplary damages are predicated upon malice, the defendant is entitled to know from the complaint what acts, omissions or circumstances are relied upon to constitute the gravamen of the charge, and the instructions of the court should be confined to the case as made by the evidence. In the case of Welch v. Stewart, 31 Mo. App. 376, the court say: ''When a petition is framed strictly on the theory of compensation only, and states no case under the law for recovery of exemplary damages, it is error to instruct the jury on any hypothesis for an award of exemplary damages.'' Where both actual and exemplary damages are claimed, it has been considered necessary to allege each in a separate or distinct count or cause of action; but under our liberal practice, we deem a complaint sufficient to admit the proof when it reasonably appears from the recitals thereof that the damages alleged were maliciously occasioned. It is held in Iowa that ''where a party intends to prove malice, to

affect damages, he must expressly aver the same.'' Johnson v. Ry. Co., 51 Iowa, 25, 50 N. W. 543. To the same effect, Sullivan v. Oregon Ry. & N. Co., 12 Or. 392, 7 Pac. 508, 53 Am. Rep. 364; Samuels v. Railroad Co., 35 S. C. 493, 14 S. E. 943, 28 Am. St. Rep. 883; Railway v. Garcia, 70 Tex. 207, 7 S. W. 802; 5 Encyc. of Pl. & Pr. 723, and cases collated. In the case of Omaha Coal Co. v. Fay, 55 N. W. 211, the Nebraska court say: ''Where only consequential damages are claimed, they must be specially pleaded; and in such cases the jury should be confined by the instructions, in assessing the amount of recovery, to the consideration of such damages as are so pleaded.'' According to an elementary rule, instructions concerning exemplary damages, though properly alleged, should never be given unless evidence applicable thereto has been introduced. Railroad Co. v. Le Gierse, 51 Tex. 189; Kennedy v. North Mo. R. Co., 36 Mo. 351; Batterson v. Ry. Co. (Mich.) 13 N. W. 508; Bayard v. Smith, 17 Wend. 88. There being nothing in the complaint or in the evidence from which malice may be presumed, the instruction authorizing the imposition of exemplary damages was seriously prejudicial to appellant.

The judgment appealed from is reversed, and a new trial ordered.