HUGH McFADDEN, DEFENDANT IN ERROR, v. JOHN J. LANE, PLAINTIFF IN ERROR.

Argued November 30, 1904—Decided March 6, 1905.

1. Upon a review of the evidence returned with the bills of exceptions herein—*Held*, that there was evidence to show want of probable cause for the charge of larceny preferred by the defendant against the plaintiff.
2. The question whether in an action for malicious prosecution, the facts being in dispute, the existence of probable cause is for the decision of the court or the jury, is not passed upon, the question not having been raised in the trial court.
3. Malice in the law is the intentional doing of a wrongful act, without just cause or excuse. A sworn accusation of larceny, made as the basis of a criminal prosecution, is justified if the party accused be found guilty. It is excused if probable cause exist for the accusation, although acquittal follow. In the absence of either guilt or probable cause to charge guilt, such an accusation is wrongful, and if intentionally made, it may reasonably be found to be malicious.

On error to the Union county Circuit Court.

For the plaintiff in error, *Conover English* and *Robert H. McCarter*, attorney-general.

For the defendant in error, *Guild, Lum & Tamblyn* and *Paul Lum*.

The opinion of the court was delivered by

PITNEY, J. This was an action for malicious prosecution, and resulted in a verdict and judgment for the plaintiff. The assignments of error raise solely the question whether the trial judge erred in refusing defendant's motions for nonsuit and for direction of a verdict in his favor, both of which motions were rested upon the ground that there was no evidence that the defendant was actuated by malice or that he acted without probable cause in prosecuting the plaintiff.

The evidence returned with the bills of exception discloses that the plaintiff was a common carter or local expressman, residing and doing business at the city of Summit, in this state, and that defendant was the local freight agent of the Delaware, Lackawanna and Western Railroad Company at that place; that on October 2d, 1903, the defendant entered a sworn complaint in writing before the mayor of the city, acting as justice of the police court, charging that on September 29th the plaintiff "did unlawfully take one crate of tomatoes from D., L. & W. freight-house, of the value of one dollar, of the goods and chattels and property of D., L. & W. R. R. Co., then and there being found, unlawfully did steal, take and carry away;" that thereupon the mayor issued a warrant for the plaintiff's arrest; that he was apprehended and required to give bail for his appearance at a hearing; that he waived indictment and submitted to a hearing before the justice of the police court, and that after hearing and examination of witnesses the justice dismissed the complaint. These facts were not at all in dispute. Having thus shown that the defendant had instituted a criminal prosecution against him which had been terminated by his discharge, the plaintiff undertook to supply the remaining elements necessary to entitle him to a verdict in this form of action by introducing evidence to show that the defendant acted in the premises maliciously and without probable cause to believe the plaintiff guilty of the offence charged against him. In reviewing the evidence bearing upon these points, we are not concerned at all with the question of the plaintiff's guilt or

innocence.  He is entitled to the presumption of innocence that every citizen enjoys in the absence of a legal adjudication of guilt, and that presumption is conclusive for the purposes of this case.

There was no proof of express malice, beyond such as arose out of defendant's conduct in making the charge against the plaintiff under the circumstances that were presented to him at the time he made it.  We are here concerned, therefore, solely with the case that was presented to the defendant when he swore to the complaint, but must, of course, view the whole of the facts, not excluding exculpatory circumstances.

It appears that McFadden, the plaintiff, and Lane, the defendant, were both residents of Summit, and well acquainted with each other; that Lane had been freight agent for over four years, during most of which time McFadden had been in the habit of carting freight from the railroad station, for various consignees, to the knowledge of Lane; that on the morning of September 29th, some time before ten o'clock, McFadden, under employment of one Cohen, a local dealer in vegetables, called at the station for some fruit and vegetables that were lying there consigned to Cohen; that McFadden was waited on by one Gomez, the cashier of the freight office, who procured McFadden's signature to some paper that amounted to a receipt for the goods that were consigned to Cohen; these were some potatoes, onions and bananas.  McFadden took the goods for which he had thus receipted, and took, besides, the crate of tomatoes in question.

There was evidence tending to show that the tomatoes were in fact addressed to Cohen, as the other goods taken by McFadden admittedly were.  The evidence on the part of the defendant tended to show that the tomatoes were both billed and addressed to one Papio, another local dealer.  It was proven beyond controversy that shortly after taking the goods from the freight office, and before ten o'clock in the morning, McFadden delivered all the goods, including the tomatoes, to Cohen's place of business, in Summit, distant about one mile from the station.  Lane, the defendant,

appears to have ·been absent from the freight office, or at least otherwise engaged, at the time McFadden took the goods. About eleven o'clock on the same day, Lane was called upon by Papio with a complaint of a shortage of one crate in a consignment of tomatoes billed to him. Lane learned, on inquiry, that McFadden had taken them. On the same day, between one and two o'clock, McFadden called at the freight house, and Lane taxed him with having taken a crate of tomatoes that did not belong to him. McFadden replied that he had taken a crate of tomatoes, but that they were marked "Cohen." In response, Lane insisted that they were not marked "Cohen," but were marked "Papio," and demanded that McFadden should return them. On the following morning, September 30th, McFadden was again at the freight office and Lane reminded him that the tomatoes had not been brought back, saying to him, "I want you to get them back here or they will spoil." McFadden again insisted that the tomatoes belonged to Cohen. Lane replied, "They do not; they belong to Papio, and I want you to bring them back." On both occasions McFadden, in effect, refused to return the tomatoes, on the ground that they had been properly delivered to Cohen. On the following day, October 1st, in response to a request from Lane, the railroad company sent a detective officer named Janecke, to Summit, and Lane and Janecke went together to Papio's place, learned from him that the tomatoes had not as yet been delivered there, and then proceeded to Cohen's place, where they found the crate of tomatoes, upon which, according to Lane's and Janecke's testimony, was a card bearing Papio's address. According to Mrs. Cohen's testimony, she told Lane and Janecke at this time that when McFadden brought the tomatoes to her place, she informed him that she had not bought them, and that he, in reply, had said that her name was upon them. Mrs. Cohen also testified that there were, in fact, two address tags upon the tomatoes, and that when Lane and Janecke called at her place, one of them removed one of these tags. This they denied. But they both testified, in substance, that they were informed by Mrs. Cohen that when McFadden left the toma-

toes there he did so because they were, as he said, addressed to Cohen.

On the day after recovering the tomatoes, Lane swore to the complaint ·in question. That complaint included the charge of larceny. Now, whatever probable cause may have existed for charging McFadden with a violation of the rules of the railroad company, in taking goods from the station without signing a receipt for them, we are unable to see (assuming that the jury accepted, as they did, that view of the evidence which was favorable to the plaintiff) that the case was devoid of evidence to show want of probable cause for the accusation of larceny. The jury might reasonably find that the *animus furandi* was wholly lacking, and that from the whole of the circumstances that were presented to Lane when he swore to the complaint, he had no probable cause to charge that McFadden intended to steal the tomatoes.

It is insisted by the learned attorney-general that the question whether probable cause for the prosecution existed was a question of law to be decided by the trial court, and ought not to have been left to the jury. · It has been held in a number of cases that if the facts are in dispute, or the question depends upon a chain of circumstances connected with the conduct of the parties, the facts and the inferences to be deduced from them must be found by the jury, but when they are found by the jury the judge is then to decide whether they establish probable cause or the want of it. So it was laid down in our Supreme Court by Mr. Justice Depue in *Apgar* ·v. *Woolston,* 14 *Vroom* 57 (at *p.* 63), upon the authority of *Blatchford* v. *Dod,* 2 *Barn & Ad.* 179; *Panton* v. *Williams,* 2 *Q. B., Ad. & E.* (*N. S.*) 169; *Turner* v. *Ambler,* 10 *Id.* 252, and other English cases.

In *Bell* v. *Atlantic City Railroad Co.,* 29 *Vroom* 227, and *Magowan* v. *Rickey,* 35 *Id.* 402, where the facts were not in dispute, it was held by the Supreme Court that the existence of probable cause was a question for the court's determination. So it was said in this court, with respect to undisputed facts, in *Stricker* v. *Pennsylvania Railroad Co.;* 31 *Id.* 230 (at *p.* 235). The topic is treated in 19 *Am. & Eng. Encycl. L.* (*2d ed.*) 669, 673, *tit. "Malicious Prosecution."*

We are not reminded that this court has as yet been called upon to pass upon the doctrine laid down by the Supreme Court with respect to disputed facts in *Apgar* v. *Woolston, supra.* We are not at present required to pass upon it, for the doctrine was not invoked by counsel for defendant in the trial court. The defence there proceeded upon the theory, not that the jury were simply to pass upon the existence of the circumstances relied on to constitute probable cause, but that the general question of the existence of probable cause was for the jury's decision. As already observed, upon the motions whose denial is made the subject of the bills of exception, reliance was rested simply upon the absence of evidence to show want of probable cause. In our view there was such evidence. It does not appear that the trial judge was requested to pass upon the question of probable cause as a matter of law upon conceded facts, nor to instruct the jury that upon a suggested state of facts, if found by them, probable cause existed. The requests to charge dealt with the existence of probable cause as a jury question, and no exception was taken either to the instructions as given, or to the denial of such requests as were not complied with.

With respect to the insistment that there was no evidence to show malice on the part of the defendant, it seems to us that if the jury believed McFadden's testimony to the effect that the tomatoes were in fact addressed to Cohen, and believed Mrs. Cohen's testimony to the effect that the crate bore two tags, one above the other, and that the upper tag was removed by Lane and Janecke at the time they recovered the tomatoes, these circumstances, coupled with the charge of larceny preferred by Lane on the following day, might be reasonably deemed to raise the inference that a tag with Cohen's name upon it had been removed for the purpose of destroying evidence that would tend to exculpate McFadden from the charge, from which the existence of express malice on Lane's part would not be an unreasonable inference.

And even without evidence of express malice, the general malice sufficient to sustain the present action is inferable from the fact of an unfounded charge purposely made with-

out the existence of probable cause. *Barron* v. *Mason,* 31 *Vt.* 189; *note to* 2 *Greenl. Evid.* (15*th ed.*) 452; 19 *Am. & Eng. Encycl. L.* (2*d ed.*) 678, *tit. "Malicious Prosecution."*

Malice in the law is the intentional doing of a wrongful act without just cause or excuse. *King* v. *Patterson,* 20 *Vroom* 417. An accusation of larceny is justified if the party accused be found guilty. It is excused if probable cause be found for the making of the accusation, although the prosecution result in acquittal. In the absence of either guilt or probable cause to charge guilt, a sworn accusation of larceny, made as the basis of a criminal prosecution, is wrongful, and where intentionally made it may reasonably be found to be malicious.

The distinction between an unfounded charge intentionally made without reasonable cause and a similar charge unintentionally made where defendant's intention was to make an accusation for which he had probable cause, was dealt with by our Supreme Court in *O'Brien* v. *Frasier,* 18 *Vroom* 349. There the defendant had, in writing, accused the plaintiff before a magistrate of an offence for which, confessedly, no probable cause existed. The court held it admissible, as tending to rebut the presumption of malice, for the defendant to prove that he reasonably believed the plaintiff to be guilty of a certain offence, that the magistrate, through a misunderstanding, had inserted in the complaint a different accusation from that intended by the defendant, and that the latter had ignorantly taken the oath in that form. At the same time it was said by Chief Justice Beasley, that without the introduction of evidence to show the mistake "the jury would have been constrained, in right reason, to find not only that the prosecution had been founded in falsehood, to the knowledge of the defendant, but that it was consequently malicious, and thus his liability would have ensued."

And in *Navarino* v. *Dudrap,* 37 *Vroom* 620, this court held that from the falsity of the facts stated in an affidavit upon which an arrest was procured, both malice and want of probable cause might be inferred.

It is insisted in this case that the presumption of malice is

conclusively rebutted by the fact that the defendant simply laid before the magistrate the facts on which his accusation was based. If Lane had contented himself with charging that McFadden unlawfully took the crate of tomatoes from the freight-house, that question might perhaps be raised. But when he included in his complaint the charge of larceny, he thereby characterized McFadden's act as something more than a mere unlawful taking, and made himself responsible accordingly.

The record disclosing no error prejudicial to the defendant, the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN. 12.

*For reversal*—None.