GAMBLE, Respondent, v. KEYES, Appellant.

(178 N. W. 870.)

(File No. 4636.   Opinion filed July 30, 1920.   Rehearing denied November 6, 1920.)

1.   Damages—Malicious Trespass Under Warrant of Arrest—Injury to Name, Humiliation, Disgrace, Lack of Evidence of—Failure to Take Case From Jury—Error,

Where, under no view of the evidence could trial court or jury find compensatory damages to any material amount for injuries to good name of plaintiff, or that she was humiliated and disgraced in the opinion of her friends and associates, the verdict for plaintiff can not stand, and trial court should have taken from jury question of such damages.

2.   Same—No Evidence of Large Actual Damages, Reversal Required, Where Punitive Damages Wrongfully Submitted to Jury—No Evidence of Malice—Erroneous Refusal of Requested Instruction Re Necessary Malice—Rule Re-stated—Statute.

Where no facts were proven to establish actual damages in large sum found by jury, judgment should be reversed, trial

court having erroneously submitted to jury question of punitive damages; there being no evidence to sustain finding of malice. In order to justify imputation of malice, re rule of punitive damages, the injury must have been conceived in spirit of mischief, and partake of criminal or wanton nature; the act, in order to be malicious, must be wrongful, intentionally done, with evil mind and a wish to injure. Exemplary damages only as a means of punishment, are recoverable "when the defendant has been guilty of oppression, fraud or malice, actual or presumed," under Rev. Code 1919, Sec. 1965; and trial court should have given a requested instruction which was in accord with this rule.

3. **Same—Malice, Instructing As Per Statute, Then That Legal Malice "Is Regardless of Legal Rights of Citizen," Erroneous —Rule Re Statute Stated.**

Where trial court, in a suit for damages for alleged injury to plaintiff under a warrant of arrest, properly instructed concerning malice as importing wish to vex, annoy or injure (Sec. 3628, Rev. Code 1919,) but added thereto: "Malice which is presumed, or malice in law, * * is not personal hate or ill-will of one person towards another, it refers to that state of mind which is regardless of the legal rights of a citizen in a person's conduct towards that citizen," such additional statement destroyed the effect of quotation of statute, giving to jury, if they understood it at all, a very different idea of what they must find regarding defendant's having acted maliciously, than as expressed in the rule herein laid down and as defendant requested; since, under said statute they, to find malice, whether resting the finding on proof or on "presumption of law," must find there was "a wish to vex, annoy or injure," and there can be no malice without wrong motive.

4. **Same—Punitive Damages For Trespass—Defendant's Belief Whether Co-trespasser Had Search Warrant, Instruction Ignoring Question, Error.**

Where there would have been no cause of action for damages from breaking into plaintiff's house, providing the deputy sheriff accompanying defendant, or his principal the sheriff, held a warrant authorizing such entry, trial court, in submitting question of punitive damages, erred in failing to instruct jury on necessity of finding whether defendant believed such authority existed.

5. **Verdict—Scope of Decisiveness of, Limited to Issues Submitted, Not to Pleadings—Rule.**

The supposition that a verdict is conclusive on all facts essential as basis for verdict reached, and is decisive of every issue of fact raised by pleadings, is incorrect. As matter of

law, the jury is supposed to pass only upon those issues of fact submitted to it under instructions of court, which issues so submitted are those on which verdict becomes conclusive against defeated party.

6. **Same—Damages to Reputation—Instruction Virtually Directing Verdict For Damages, No Evidence Supporting, Error.**

Where there was no evidence that plaintiff suffered damages to her reputation, trial court erred in virtually instructing jury to bring in verdict for damages; the issue should have been taken from jury; the error was prejudicial.

7. **Same—Damages For Breaking Into "Blind Pig" and Public Resort—Instruction That No Evidence of General Reputation, Evidence Showing Reputation, Error.**

Where, in a suit for damages from breaking into plaintiff's home, the general reputation of the home as a "blind pig" and public resort was testified to, an instruction that no evidence was given re plaintiff's general reputation, was prejudicial error; since reputation of the home affects reputation of every adult person therein.

8. **Damages—Compensatory, Punitive, Damages, Allowing Jury to Consider Without Evidence of Malice, Ignoring Whether Defendant Believed He Acted Under Authority Re Trespass—Grounds for Reversal on Instructions.**

When jury are allowed to consider compensatory damages not sustained by evidence, and to give punitive damages without any proof of malice under law as held by the court, and are deprived of right of determining whether defendant believed he was acting under authority—in reaching a verdict, such action by trial judge must be reversed.

Smith and Gates, J. J., dissenting.

Appeal from Circuit Court, Codington County. HON. WILLIAM N. SKINNER, Judge.

Action by Elisabeth F. Gamble against E. R. Keyes, to recover damages resulting from breaking into plaintiff's house and home. From a judgment for plaintiff, and from an order denying a new trial defendant appeals. Reversed, and remanded for new trial.

*Sherin & Sherin,* for Appellant.
*J. G. McFarland,* for Respondent.

(2) To point two, Appellant cited: Lyles v. Perrin, 119 Cal. 265; 13 Cyc. 108-110; Anderson v. International Harvester Company, 16 L. R. A. (N. S.) 440; 8 R. C. L., 134-136.

Respondent cited: Sec. 1965, Rev. Code 1919.

(5)   To point five, Respondent cited: Shoemaker v. Sonju, 15 N. D. 518; 108 N. W. 42.

WHITING, J.   This case was first before us upon an appeal from an order overruling a demurrer to the answer.   Our opinion will be found reported in Gamble v. Keyes, 35 S. D. 644, 153 N. W. 888.   The case was afterwards tried, and plaintiff awarded a large verdict and judgment.   Upon appeal, we reversed the judgment and awarded a new trial.   Our opinion on such appeal will be found reported in Gamble v. Keyes, 39 S. D. 592, 166 N. W. 134.   Reference to such opinions is made for a full understanding of the nature of the action, the issues joined therein, and the matters determined upon the two appeals.   Upon a second trial, plaintiff obtained another, though smaller, verdict, and from the judgment entered thereon defendant again appeals.

Upon the first appeal, we held that the complaint alleged facts sufficient to sustain a judgment both for compensatory and for punitive damages.   To plead facts is one thing, to prove them is another—upon the second appeal, in reviewing the evidence, we said:

"Under no view of the evidence could the trial court or the jury rightfully find compensatory damages to any material amount for the injuries pleaded in paragraph 3, there being absolutely no evidence to show that appellant 'was injured in her good name among her friends and associates,' or that she was 'humiliated and disgraced in the opinion of her friends and associates'; for all the evidence shows that she still stands as she formerly did in the estimation of such friends and associates.   Appellant did not allege that she herself suffered any shame or felt any disgrace.   It is urged that the invasion of the home was the most serious element of damages.   Conceding that to be so, no one would claim that the whole $20,000 was awarded for that wrong.   Furthermore, there is no claim of damages based upon the invasion of the home other than that for injury to the property, for physical injury to appellant, and for the injuries set forth in the above quotations."

[1]   Plaintiff offered no further evidence on the second trial than on the first.   An examination of the record herein shows that almost every word quoted above is applicable to the record now

before us. It will be noted in the above quotation that we specific-
ally called plaintiff's attention to the fact that, in paragraph 3 as
it then read, she was seeking nothing for her own humiliation, shame,
disgrace or mental suffering. Paragraph 3 has been amended so
that it now pleads damages because of plaintiff's humiliation,
shame, disgrace, and mental suffering. This amendment makes
certain evidence material that was irrelevant to the issues as made
before; but now, as on the first trial, there is not one particle of
evidence that establishes any injury to plaintiff's good name
among her friends and associates, or that tends to prove that she
was disgraced in the opinion of her friends and associates. It
follows that the trial court should, as requested by the appellant,
have taken from the jury the question of damages resulting from
injury to plaintiff's reputation.

[2] There were no facts proven that would establish actual
damages in any large sum. It follows that the judgment should
be reversed unless the trial court rightfully submitted to the jury
the question of punitive damages. That the trial court erred in
so doing is clear. The record before us contains no evidence suf-
ficient to sustain a finding that defendant acted maliciously. The
trial court should have taken the question of punitive damages
from the jury; but when he refused to, he should have given the
instructions requested by appellant. This court, years ago, laid
down the rule as to what malice was necessary as a basis for
punitive damages in an action of this kind; moreover we again
announced such rule upon the second appeal in this very case,
thus furnishing a guide that should have been followed by the
trial court when it saw fit to submit the question of punitive
damages to the jury. Upon such former appeal, we quoted with
approval the following from Baxter v. Campbell, 17 S. D. 475, 97
N. W. 386:

"In order to justify the imputation of malice, within the
rule of punitive damages, the injury must have been conceived in
a spirit of mischief, and partake of a criminal or wanton nature.
City of Chicago v. Martin [49 Ill. 241] 95 Am. Dec. 590, and
cases cited in the notes. As applied to torts, an act, in order to
be malicious, must be wrongful, and intentionally done, with an
evil mind, and a wish to injure another. Bouvier's Law Dict.
Pickett and Wife v. Creek, 20 Wis. 358. * * * Our state provides

for exemplary damages only as a means of punishment 'when the defendant has been guilty of oppression, fraud or malice, actual or presumed.' Rev. Civ. Code, § 2292 [section 1965, Rev. Code 1919]. Malice is defined to be a 'wicked intention to do an injury.' 'In trespass, when the injury has been wanton or gross and outrageous. Not merely the doing of an unlawful or injurious act, but an act conceived in a spirit of mischief or of criminal indifference to civil obligation.' Anderson's Law Dict."

[3, 4] Appellant requested an instruction conforming exactly to the law announced in the above quotation. The trial court, in instructing as to what constitutes malice, quoted verbatim section 3628, Revised Code of 1919; but it added another sentence as follows:

"Malice which is presumed, or malice in law, as distinguished from malice in fact, is not personal hate or ill will of one person towards another; it refers to that state of mind which is regardless of the legal rights of a citizen in a person's conduct towards that citizen."

Such statement, if not meaningless, at least destroyed the effect of the quotation of the statute; it gave to the jury if they understood it at all a very different idea of what they must find in order to find defendant to have acted maliciously than the ideas they would have gathered if the trial court had given to it as its instruction the law as announced by this court and as requested by appellant. Under section 3628, Rev. Code 1919, the jury, in order to find malice whether resting such finding on proof or on "presumption of law," must find that there was "a wish to vex, annoy, or injure." There cannot be malice unless there was a wrong motive. 18 R. C. L. 4. Under the evidence, no jury could rightfully find that the defendant's acts partook of either "a criminal or wanton nature"; or that they were done with "an evil mind or a wish to injure" the plaintiff. There certainly was no "wicked intention to do an injury."

[5] Appellant's acts resulting in the alleged damages were acts done while acting with one Ring, a deputy sheriff. There would have been no cause of action provided Ring or his principal, the sheriff, held a warrant authorizing breaking into respondent's home. No one would claim that, if appellant supposed such authority to exist, he would be liable for punitive damages. It

follows that the trial court, if it submitted the question of punitive damages, should have carefully instructed the jury upon the necessity of its finding whether or not appellant believed that the necessary authority did exist. This most important matter was ignored by the court. The only question submitted was whether appellant and Ring had a search warrant, and the jury were not instructed as to the effect of defendant's honestly believing that they had full authority for doing what they did. It is often said that the verdict of a jury is conclusive on all the facts essential as a basis for the verdict reached; and that a verdict is decisive of every issue of fact raised by the pleadings. These statements are not accurate. The verdict, under the instructions, often rests on only a part of the facts at issue and, on the other hand, often rests upon facts not covered by the pleadings but which have been established without objection. As a matter of exact law the jury is supposed to pass *only upon those issues of fact submitted to it under the instructions of the court.* The jury has no right to consider any other issue; and it is these issues, submitted to the jury under the instructions, upon which the verdict becomes conclusive as against the defeated party. Whether appellant was advised that neither Ring nor the sheriff had a search warrant was a disputed fact. It was a most material fact on the question of punitive damages, and yet one will search the instructions in vain to find one word giving to the jury the right to consider this important matter.

[6,7] The trial court gave an instruction that was in effect a direction of verdict for damages to respondent's reputation. This was prejudicial error because: (a) There was absolutely no evidence that she suffered any damage to her reputation, and this claimed element of damages should have been taken from the jury under the former opinion of this court. (b) The trial court told the jury that "there has been no evidence given as to the general reputation of the plaintiff." The general reputation of her home as a blind pig and public resort was testified to by numerous witnesses. The reputation of the home affects the general reputation of every adult person therein, and evidence that this place was a "blind pig" and public resort, together with evidence that respondent lived therein, tended to prove her to be an inmate of a "blind pig" and public resort and therefore bore on the issue of her general reputation.

[8]   When the jury are allowed to consider certain compensatory damages not sustained by any evidence, and are allowed to give punitive damages where there is absolutely no proof of malice under the law as established by the holdings of this court, and when the jury are deprived of the right of determining whether the defendant believed he was acting under full authority, and of considering such matter in reaching their verdict, the duty of this court is clear, and we must continue to send this case back until it is tried in accordance with the laws and the evidence.

The judgment and order appealed from are reversed.

SMITH and GATES, J. J. (dissenting.)   It is to be regretted that a sense of judicial obligation requires another dissenting opinion in this case.   Our majority Brethren say:  ·

"There were no facts proven that would establish actual damages in any large sum.   It follows that the judgment should be reversed unless the trial court rightfully submitted to the jury the question of punitive damages.   That the trial court erred in so doing is clear.   The record before us contains no evidence sufficient to sustain a finding that defendant acted maliciously."

It is conceded that the facts proven are sufficient to establish actual damages, though in the opinion of our Associates such actual damages *should not be large.*   Actual damages sufficient to sustain punitive damages are conceded.   The reversal rests wholly upon the assertion that the facts in evidence are not sufficient to sustain an award of punitive damages, and specifically, that it is insufficient to show that the defendant acted maliciously.   Because of this assertion, a dissenting opinion demands a somewhat full statement of facts as found by the jury in arriving at its verdict.

Plaintiff was a married woman, living with her husband and a daughter 14 years of age in a dwelling house owned by plaintiff in the town of Henry, Codington county.   On August 17, 1914, plaintiff's husband was arrested by the sheriff of Codington county, at plaintiff's home, upon a warrant from the municipal court of the city of Watertown, upon a complaint charging the husband with unlawfully selling intoxicating liquors.   At the time of the arrest, the sheriff took into his possession a case of beer and a cask of beer found in a shed to the west side of the dwelling house.   This was the only intoxicating liquor which the sheriff

saw or found at the time of the arrest. He locked the beer in the city hall at Henry, to be held as evidence, and immediately took the accused before the municipal court at Watertown. Appellant Keyes lived in the town of Henry. About 8 o'clock the evening of the arrest, Keyes called the sheriff on the telephone at Watertown, and asked him what stuff he had got at Gamble's and asked if he had got a black grip. The sheriff replied that he had not got such a grip. Keyes said "You want to get that; it is full of liquor." The sheriff then told Keyes to get Mr. Ring, his deputy, and to go up and see if they could get the grip. Keyes said, "you have got a warrant, haven't you?" and the sheriff replied that he had a warrant for the arrest of Gamble, but did not have a search warrant; that he had arrested Gamble; that he did not want Mr. Ring to go up there and get him into trouble without a search warrant, but to have Ring go up and see if he could get the grip. Upon cross-examination the sheriff was asked:

"Q. You wanted Ring to run a bluff and see if he could get that? A. Yes, sir."

That same evening Keyes saw Ring, and told him he had talked with Sheriff Frank Elkins, and that Elkins had told him to go down and see if "we" could get that black grip. Ring told Keyes that he did not want to go alone, and said he would have to take Keyes with him, if he could go, as he could not find the town marshal. Ring and Keyes went to the Gamble house. Ring knocked on the door. Mrs. Gamble opened the door and asked who they were. Ring told her who Keyes was, and that they had come after the black grip; she told them they would not get it. Keyes said they came for that suit case, and she told him he would not get that suit case because she considered it personal property. She then closed the front door, locked it, and sat down on a chair near the door. The men told her if she did not open the door they would burst it open; she refused, and they did burst the door, and when it flew open Keyes stepped in. As he came in she threw a cuspidor at him; Ring came in behind Keyes. When she hit Keyes he said to Ring, "Arrest her," and when Ring took hold of her Keyes said, "Handcuff her," and both took hold of her. They held her by the arms by main force; did not strike her, but compelled her to go with them. After they got

outside the house Keyes went back and got the suit case, and carried it in one hand and held her arm with the other; she tried to get away from them, but they were too strong. They took her to the station house several blocks distant. The daughter, Ethel, followed them from the house. Mr. Ring remained with them in the station house, while Mr. Keyes went out. Keyes came back and told her she could go home. She and her daughter returned home, and remained during the night. Her husband came back from Watertown the next afternoon, and she told him what had happened. He told her she had better have a doctor. They had one come, and he prescribed for her injuries. Plaintiff was slightly bruised, was humiliated, and suffered nervous shock. She knew that her husband had sold beer and drank it at their home, but had never sold it herself. She had never gone out in society, but had visited a few of her neighbors before this affair. After her arrest she felt humiliated, and did not go out, though her neighbors spoke to her as usual when she met them on the street. There was very little conflict in the testimony, and there was competent evidence to establish all the foregoing facts. The rule has long been settled in this state that the verdict of a jury is conclusive as to disputed facts upon a motion for new trial.

The action is for damages for false imprisonment. In this connection it may be observed that the evidence referred to in the majority opinion as minimizing the injuries to plaintiff's feelings through loss of social standing was received, and could be competent only as relating to actual damages, and has no bearing whatever upon the question of punitive damages.

The statute of this state (section 1965, Code 1919) provides that:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Under this statute, wrongful acts for which punitive damages may be awarded are divided into three classes: First, acts of oppression, malice presumed; second, fraudulent acts, malice presumed; third, wrongful acts accompanied by actual malice. Want of actual malice in acts of oppression or fraud is not a ground

for denial of punitive damages. Other wrongful acts accompanied by malice are sufficient to justify punitive damages. In the first two classes of cases, proof of actual malice, while not essential to sustain a recovery, is competent in enhancement of punitive damages. In the third class of cases the absence of actual malice will defeat a recovery of punitive damages.

The case of Baxter v. Campbell, 17 S. D. 475, 97 N. W. 386, relied upon and referred to in the majority opinion, belongs to the latter class. That was an action against a physician to recover damages for malpractice, and the evidence discloses no malice, actual or presumed. At the utmost, it disclosed acts constituting gross negligence, but no acts of oppression or fraud, and the wrongful acts alleged were not accompanied by any proof of malice, actual or presumed.

The case of Roberts v. Shaffer, 36 S. D. 551, 156 N. W. 67, is an example of "oppression" which justifies punitive damages. In that case a judgment debtor had claimed exemption under an execution levy, and his right to exemption had been wilfully disregarded by the officers. This court, speaking through Judge Whiting, said:

"When, as in this case, the rights of a debtor become absolute and clear, it does not behoove the creditor or an officer acting for him, to disregard such rights and attempt by unlawful means to deprive him thereof; and, if such creditor or officer sees fit to willfully disregard such rights and attempts to override and destroy the same, he cannot be heard to complain when a jury of his peers punished his act by the imposition of punitive damages."

In Bailey v. Walton, 24 S. D. 118, 123 N. W. 701, where the evidence disclosed merely a wrongful seizure and sale of property to satisfy a judgment, and where there was not a scintilla of evidence of actual malice, an instruction, submitting the question of punitive damages, was held proper, and the opinion in that case clearly distinguishes Baxter v. Campbell. The rule announced in Roberts v. Shaffer is sustained by an overwhelming weight of authority. Leavell v. Leavell, 122 Mo. App. 654, 99 S. W. 460; London Guarantee & A. Co. v. Horn, 206 Ill. 493, 69 N. E. 526, 99 Am. St. Rep. 185; Schonwald v. Ragains, 32 Okl. 223, 122 Pac. 203, 39 L. R. A. (N. S.) 854; McFadden v.

Lane, 71 N. J. Law, 624, 60 Atl. 365; Bowles v. Lowery, 5 Ala. App. 555, 59 South 696; Williams v. Williams, 132 Mo. App. 266, 111 S. W. 837; Southern Ry. Co. v. McEntire, 169 Ala. 43, 53 South. 158; Brennan v. United Hatters, 73 N. J. Law, 729, 65 Atl. 165, 9 L. R. A. (N. S.) 254, 118 Am. St. Rep. 727, 9 Ann. Cas. 698; McGurk v. Cronenwett, 199 Mass. 457, 85 N. E. 576, 19 L. R. A. (N. S.) 561.

In Hooker v. Smith, 19 Vt. 151, 47 Am. Dec. 679, an action for false imprisonment, the court said:

"It appears, also, that the defendants knew, at the time, that the sheriff was acting under a civil process. In their plea in bar they describe it particularly, and say that the sheriff requested them to assist him in executing it; and in the replication, the truth of which is admitted by the demurrer, it is stated that the defendants entered the plaintiff's dwelling house, by forcibly opening the outer door, for the purpose, and with the intent to execute therein the right of execution by arresting his body. With the full knowledge that the sheriff was about to do an illegal act, they united with him in committing it; and we think they must share with him in its consequences. A contrary doctrine would enable a sheriff, under color of a civil process, to add to his own physical power, to accomplish an illegal object, the power of a lawless, but wholly irresponsible, mob."

Sheriff Elkins, himself testified that he told Keyes that he had no search warrant, but only a warrant for the arrest of Gamble. The evidence conclusively establishes the fact that neither the sheriff nor his deputy, Ring, had a search warrant or other process authorizing the entry or search of plaintiff's dwelling house, and the direct evidence of at least three credible witnesses proves that the defendant, Keyes, was fully cognizant of that fact prior to and at the time he and Ring forced open and entered plaintiff's home.

The court instructed the jury that the acts of forcibly entering plaintiff's home without a search warrant, and arresting and restraining her of her liberty, were unlawful. Instructing the jury as to what constitutes malice, the court quoted the statute in full, and, further, accurately and correctly interpreted the statute as applied to the facts in this case saying:

"Malice which is presumed, or malice in law as distinguished

from malice in fact, is not personal hate or ill will of one person towards another; it refers to that state of mind which is regardless of the legal rights of a citizen, in a person's conduct towards that citizen."

A clearer instruction, or a more typical example of "oppression" cannot be found in the books. The law applicable is concisely stated in 11 R. C. L. 821.

"Malice, as used in this connection, does not necessarily mean anger or malevolent or vindictive feeling toward the plaintiff: but a wrongful act without reasonable excuse is malicious within the legal meaning of the term."

The majority opinion says:

"The trial court, if it submitted a question of punitive damages, should have carefully instructed the jury upon the necessity of its finding whether or not appellant believed that the necessary authority did exist."

There are two answers to this statement: First, no request for any such instruction was made by appellant; and, second, there is not a scintilla of evidence in the record tending to show that appellant believed that Ring had a search warrant. Appellant himself did not even intimate any such belief in his testimony. The majority opinion says:

"As a matter of exact law, the jury is supposed to pass only upon those issues of fact submitted to it under the instructions of the court. The jury has no right to consider any other issue; and it is these issues, submitted to the jury under the instructions, upon which the verdict becomes conclusive as against the defeated party."

And the majority opinion apparently insists that this rule be applied whenever a conflict in the evidence arises in the course of a jury trial. Can it be possible that our majority Associates intend to lay down the rule that the trial court must specifically refer to and submit to the jury each and every conflict in the testimony of witnesses? Such certainly would be the effect of this language as applied in this case. If such be the rule, and it should happen that the trial court should direct the attention of the jury to a single conflict in the evidence, but fail to direct their attention to a dozen others equally important, the verdict of the jury would be conclusive as to the 1, but wholly inconclusive

17—Vol. 43, S. D.

as to the other 12. Certainly that cannot be the law in this jurisdiction. There is a broad distinction between issues of fact which arise upon the pleadings, and questions of credibility of witnesses which arise at a trial, and which are held conclusively determined by the findings of the jury. Stripped of legal verbiage, the majority opinion holds that a private citizen and a deputy sheriff, absolutely without legal process or warrant of law, may forcibly enter the dwelling house of a private citizen of the commonwealth, not charged with any crime, forcibly and wrongfully arrest such citizen, carry her to the city station house, detain her there without authority, and turn her loose without preferring a charge of any misconduct, and that such a case is not properly one in which punitive damages may be awarded. If this be the law, not only the legal profession, but many judges of the courts, have much to learn.

We cannot do otherwise than dissent.