Edwin **VREUGDENHIL** and Loretta **Vreugdenhil, Plaintiffs/Appellants,**

v.

**FIRST BANK OF SOUTH DAKOTA, N.A., and Western Surety Company, Defendants/Appellees.**

No. 17005.

Supreme Court of South Dakota.

Considered on Briefs Sept. 20, 1990.

Decided March 27, 1991.

J.M. Grossenburg, Winner, and Rick Johnson, Gregory, for plaintiffs/appellants.

Francis M. Smith of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendants/appellees.

WUEST, Justice.

Edwin and Loretta Vreugdenhil appeal from an order denying their claim for exemplary damages. We reverse and remand.

In 1972, Ed Vreugdenhil (Ed) purchased a one-half interest in Menning Implement Company (Menning) of Corsica, South Dakota. Ed and Sidney Hoekstra (Hoekstra), the owner of the remaining one-half interest, operated the business together until 1979 when Ed purchased Hoekstra's interest in Menning. A portion of the downpayment for this purchase was financed by First Bank of South Dakota, N.A., (First Bank) Corsica, South Dakota.[1] First Bank financed the operation and improvements of Menning under Ed's management. In December 1979, First Bank requested and received a security interest in Menning's inventory, accounts receivable, supplies, equipment and contract rights and a personal guarantee from Ed and Loretta.

In late 1980, Ed formed Solar Marketing, Inc. (Solar), an insulation manufacturing enterprise. Solar was financed by a loan from First Bank, with a 90% guarantee by the United States Small Business Administration (SBA). As security for the Solar loan, Ed mortgaged his residence, the real estate of Menning and the real estate of Solar. Ed also pledged the personal property and chattels of Menning and any interest he had in the Contract with Hoekstra. In addition to the initial financing, First Bank advanced Ed operating cash for Solar.

As the economy slowed in the early 1980's so did the business of Menning and Solar. First Bank advanced Ed the money needed to meet the periodic installments due under his Contract with Hoekstra and carried Ed when he was unable to service his business debts. By early 1982, it was apparent to First Bank that the Menning and Solar credits would have to be liquidated.

In late April 1982, Ed auctioned off some of the inventory of Menning. The auction raised approximately $130,000. Ed ex-

---

1. Formerly National Bank of South Dakota, Corsica, South Dakota.

pressed to First Bank his desire to pay off the Contract with Hoekstra using a portion of the auction proceeds. First Bank discouraged Ed from applying the proceeds to the Hoekstra Contract and requested that Ed use the money to write down the loan to Menning. Ed contends he agreed to apply the proceeds to the Menning loan only after First Bank promised to advance him the last installment due Hoekstra, January 1, 1983. First Bank denies having agreed to make such a loan.

In mid–1982, Ed endeavored to sell Menning and Solar or otherwise refinance the loans to pay off First Bank. By the fall of 1982 it was apparent that Ed would not be able to timely sell either business and First Bank prepared for liquidation. To this end, First Bank arranged for the repurchase of the Solar loan by the SBA. On November 29, 1982, First Bank notified Ed that he would have until December 10, 1982 to remedy his default on the Menning loan. Ed was unable to meet this demand.

On January 4, 1983, Ed went to First Bank seeking a loan for the last installment on the Hoekstra Contract. First Bank refused to make the loan. On January 5, 1983, Ed received a letter from Hoekstra noticing his intention to cancel and terminate the Contract unless payment was made within ninety days. Subsequently, First Bank purchased the Contract from Hoekstra for the amount of the last installment and interest.

On January 19, 1983, First Bank set-off against Ed's accounts at the Bank and applied the proceeds toward the Menning debt. As a result of the set-off, checks to state and federal taxing authorities bounced, thus subjecting Ed to criminal liability.

On January 20, 1983, Ed was served at Menning with Claim and Delivery papers, including an Order and Order to Show Cause.[2] The sheriff contacted Ed at home that evening and requested Ed to open Menning. Ed refused and indicated that he wanted to speak with his lawyer. Later that evening Ed received word from the sheriff that he was going to break into Menning unless Ed would open it. Ed left home and proceeded to Menning.

Upon arrival at the store, Ed was met by the President of First Bank, two bank employees, the sheriff and a local attorney. The sheriff requested Ed to open the door to the business. Ed again refused and stated that he "did have rights." The attorney who was present acknowledged that Ed did, indeed, have rights. Nonetheless, the President of First Bank requested the sheriff to break open the door to the business, which he did. Once inside Menning, the President of First Bank informed Ed that he would no longer have control of the business and that First Bank had taken possession of Menning. Ed was then escorted out of Menning by the sheriff.

Ed and his wife brought suit against First Bank and Western Surety Company, surety in the Claim and Delivery action.[3] The defendants moved and the trial court entered an order barring introduction of certain evidence at trial.[4] Because this or-

---

**2.** The Order awarded First Bank possession of Menning and set a hearing date of February 1, 1983 for the Vreugdenhils to show cause why possession and delivery of the property of Menning should not be made final. This hearing was never held because Ed filed a Chapter 11 bankruptcy petition on January 28, 1983.

**3.** Initially, the trial court entered summary judgment in favor of Western Surety on all counts and partial summary judgment in favor of First Bank on all alleged causes of action except that cause which related to the alleged breach of contract by First Bank to advance Ed funds with which to make the final payment on the Contract with Hoekstra. In response, plaintiffs moved the court pursuant to SDCL 15–6–60(b) to reconsider defendants' motion for summary judgment. The plaintiffs asserted that the Claim and Delivery proceeding initiated by First Bank was invalid because plaintiffs were not permitted a hearing prior to delivery of the collateral to First Bank. After reconsideration, the trial court vacated the prior summary judgment in favor of Western Surety and amended the prior partial summary judgment in favor of First Bank so as to permit any alleged causes of action for damages arising or resulting from the Claim and Delivery action.

**4.** 1. Any evidence attempting to show the invalidity or unenforceability of the security agreements executed and delivered by Edwin Vreugdenhil to First Bank of South Dakota (Bank) pledging Menning Implement Compa-

der barred introduction of much of the evidence which supported plaintiff's claim for exemplary damages, plaintiffs moved and were granted a hearing pursuant to SDCL 21–1–4.1.

SDCL 21–1–4.1 provides:

> In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

Ed was the only witness at the hearing in which numerous exhibits were introduced and admitted. Defendants put on no evidence to rebut Ed's testimony.

The trial court found that First Bank was legally entitled to institute the Claim and Delivery action and, although the court's order granting First Bank possession of Menning violated SDCL 21–15–3,[5] the mere filing of the Claim and Delivery

action did not establish by clear and convincing evidence a reasonable basis to believe the conduct of First Bank was willful, wanton or malicious. The trial court also found the acts or omissions of First Bank during the course of its association with Ed did not constitute clear and convincing evidence of a reasonable basis to believe that the acts or omissions of First Bank were willful, wanton or malicious. Consequently, the court concluded that plaintiffs had failed to demonstrate their claim for exemplary damages should be submitted to the jury. It is from the trial court's order denying plaintiff's claim for exemplary damages that plaintiffs appeal.

Initially, we note that SDCL 21–1–4.1 controls only the discovery and submission to the jury of punitive damages claims and does not, itself, define the causes of action in which exemplary damages may be recovered. South Dakota law prohibits a claim and award of punitive damages unless expressly provided by statute. SDCL 21–1–4. Express statutory authorization for punitive damages is found in SDCL 21–3–2.[6]

---

ny assets as collateral for Bank loans to the said Edwin Vreugdenhil;

2. Any evidence with respect to the SBA-Bank participating loan to Solar Marketing, Inc.;

3. Any evidence with respect to a claimed irregularity in the possessory action instituted by Bank under SDCL Chapter 21–15 except the grant by the Court in that action of interim possession to Bank;

4. Any evidence intended to establish a claim of a relationship between Bank and the Plaintiffs creating in Bank a duty to refrain from declaring default under the loans to Edwin Vreugdenhil and deny[ing] it the right to possession of their collateral;

5. Any evidence with respect to the offset by Bank of checking account balances of Plaintiffs, Menning Implement Company and Solar Marketing, Inc.;

6. Any evidence tending to show mental or emotional distress suffered by Plaintiffs with respect to any phase of this matter;

7. Any evidence attempting to establish that Plaintiffs herein were charged a higher interest rate than other borrowers of Bank.

5. SDCL 21–15–3 provides:

Upon filing the summons and complaint, and the affidavit pursuant to § 21–15–2, the judge of the court having jurisdiction shall by order, require cause to be shown at a specified time and place, after reasonable notice to

the defendant, why the plaintiff should not have delivery of the property claimed. Except as inconsistent with the provisions of this chapter, chapter 15–6 shall apply to the conduct of the hearing.

This statute contemplates a hearing prior to possession being given to the opposing party. *Baldwin v. First Nat'l Bank of Black Hills*, 362 N.W.2d 85, 90 (S.D.1985).

6. SDCL 21–3–2 provides:

In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21–3–2 has been strictly construed and requires a showing of oppression, fraud or malice. *See Groseth Int'l, Inc. v. Tenneco, Inc.*, 440 N.W.2d 276 (S.D.1989); *Yankton Production Credit Ass'n v. Jensen*, 416 N.W.2d 860 (S.D.1987); *Moosmeier v. Johnson*, 412 N.W.2d 887 (S.D.1987); *Gross v. Kouf*, 349 N.W.2d 652 (S.D.1984) (Fosheim, C.J., dissenting); *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529 (S.D.1983); *Black v. Gardner*, 320 N.W.2d 153 (S.D.

■ SDCL 21–1–4.1 conditions the submission of punitive damages to the jury on a showing by "clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct." The burden the proponent bears is demonstrating a "reasonable basis" to believe punitive damages are warranted. This "reasonable basis" must be shown by "clear and convincing evidence." Thus, the proponent's burden is a preliminary, lower-order quantum of proof than must be established at trial. It is a "prima facie case" for punitive damages. *Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991).

■ The trial court found the plaintiffs did not establish by clear and convincing evidence that there was a reasonable basis to believe the actions of First Bank constituted willful, wanton or malicious conduct. Where, as here, evidence was submitted through witness testimony,[7] the trial court is in a unique position to assess the credibility of the witness. Therefore, barring a clearly erroneous interpretation of such evidence, we will not disturb the trial court's findings. SDCL 15–6–52(a); *In Interest of A.D.,* 416 N.W.2d 264 (S.D.1987); *Sperry Corp., Sperry New Holland Div. v. Schaeffer,* 394 N.W.2d 727 (S.D.1986).

■ Although the note was in default and First Bank, therefore, had a right to claim and deliver its collateral, the taking of the collateral was done without a prior hearing, contrary to SDCL 21–15–3. *See Baldwin v. First Nat'l Bank,* 362 N.W.2d 85 (S.D.1985). Ed was thereby denied his constitutional right of due process. The attorney, present when the sheriff broke down the door to Menning, openly acknowledged that Ed did, indeed, have rights. And, indeed, the legal community has known for years that procedural due process requires a hearing *before* a person is deprived of any significant property interest. *See Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh'g denied,* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). These facts clearly and convincingly establish a reasonable basis to believe the actions of First Bank were at least wanton. The finding of the trial court to the contrary was clearly erroneous. We reverse and remand for trial including the punitive damages claim.

MILLER, C.J., and HENDERSON and SABERS, JJ., concur.

MORGAN, Retired J., concurs in part and dissents in part.

AMUNDSON, J., not having been a member of the court at the time this case was considered, did not participate.

MORGAN, Retired Justice (concurring in part and dissenting in part).

I concur in the result but I must respectfully dissent from the majority's interpretation of SDCL 21–1–4.1. The statutory language in question reads: "[T]he court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct[.]" From this wording, the majority facilely concludes that the proponent's burden is simply to establish a "prima facie case" for punitive damages. That is not the way that I read the statute.

This court has defined prima facie case thusly: "Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" *Northwest Realty Co. v. Per-*

1982) (Fosheim, J., dissenting); *Hulstein v. Meilman Food Indus., Inc.,* 293 N.W.2d 889 (S.D. 1980) (Fosheim J., concurring in part, dissenting in part); *Hannahs v. Noah,* 83 S.D. 296, 158 N.W.2d 678 (1968); *Zahrowski v. Dahl,* 78 S.D. 255, 100 N.W.2d 802 (1960); *Stene v. Hillgren,* 78 S.D. 1, 98 N.W.2d 156 (1959); *Baumgartner's Electric Construction Co. v. DeVries,* 77 S.D. 273, 91 N.W.2d 663 (1958), *rev'd* 359 U.S. 498, 79 S.Ct. 1117, 3 L.Ed.2d 976 (1959); *Gamble v. Keyes,* 43 S.D. 245, 178 N.W. 870 (1920) (Smith and Gates, JJ., dissenting); *Bogue v. Gunderson,* 30 S.D. 1, 137 N.W. 595 (1912); *Baxter v. Campbell,* 17 S.D. 475, 97 N.W. 386 (1903); *but see Till v. Bennett,* 281 N.W.2d 276 (S.D.1979) (dicta); *cf. Hunter v. Hagen,* 672 F.Supp. 426 (D.S.D. 1987); *Smith v. Montana–Dakota Utilities,* 575 F.Supp. 265 (D.S.D.1983).

7. *See State Automobile Casualty Underwriters v. Ruotsalainen,* 81 S.D. 472, 136 N.W.2d 884 (1965) for a different rule when the trial judge decides from depositions.

*ez,* 81 S.D. 500, 505, 137 N.W.2d 345, 348 (1965), *quoting* 9 Wigmore, Evidence, (3d. ed.) § 2494). *See also Jerke v. Delmont State Bank,* 54 S.D. 446, 451, 223 N.W. 585, 587 (1929). It is a far weaker threshold of proof than "clear and convincing," which this court has defined as somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure; that is, it must be more than a mere preponderance but not beyond a reasonable doubt. *Cromwell v. Hosbrook,* 81 S.D. 324, 134 N.W.2d 777, 780 (1965).

It is a fundamental rule of statutory construction that all provisions within statutes must be given effect, if possible. *Beitelspacher v. Winther,* 447 N.W.2d 347, 351 (S.D.1989); *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 294 (S.D. 1982); *In re Silver King Mines,* 315 N.W.2d 689, 691 (S.D.1982), *on reh'g In re Exploration Permit Renewal of Silver King Mines,* 323 N.W.2d 858 (S.D.1982). However attractive it may be to liberally construe statutes to avoid a harsh result, this court will not so act when such action would do violence to plain language of the statute. *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985).

What the majority has done is amend the statute by deleting the requirement for clear and convincing evidence and substituting "prima facie case," a term which does not appear in the statute, but which they apparently equate with "reasonable basis." If the legislature had wanted to require only a prima facie case, they could easily have said so. In my opinion we are required to apply the clear wording of the statute which specifies "clear and convincing," before we can launch off into interpreting "reasonable basis" to mean "prima facie."

The majority would do what the opponents of the bill failed to do in the legislature. According to the legislative history of the measure, detailed in footnote 21 of Dean Driscoll's law review article,* House opponents to the bill, already passed by the Senate in its present form, attempted to amend the bill to substitute "preponderance of the" evidence for the term "clear and convincing" evidence. The bill was so amended in the House Judiciary Committee and reported out "do pass as amended." However, it was amended back to its original wording on the floor and passed by a substantial margin (62 to 5). As Dean Driscoll notes, both burdens of proof were issues considered by the legislature, but "clear and convincing" prevailed. Driscoll, *Punitive Damages,* 33 S.D.L.Rev. at 251–52, n. 21. Until now, that is. At this point, it is noteworthy that, while Dean Driscoll's article, printed in 1988, was highly critical of the statute and suggested a revision, there has been no legislative response to his suggestion.

The purpose of a statute is to be gathered from the whole act, and in determining such purpose resort may be had not only to context, but to the structure and scheme of the act, and in some cases to its historical background or legislative history. *Simpson,* 367 N.W.2d at 763; *State v. Douglas,* 70 S.D. 203, 16 N.W.2d 489 (1945). According to footnote 18 of Dean Driscoll's article, the legislation was drafted and actively supported by the South Dakota Medical Association. Driscoll, *Punitive Damages,* 33 S.D.L.Rev. at 251. The statute as enacted came out of the amendment of several bills in the Senate Judiciary Committee. The facts that the Senate Judiciary Committee recommended "Do Pass"; that the Senate, in fact, passed the bill by a margin of 30 to 2; and that the House ultimately passed it in its present form by a margin of 62 to 5, shows pretty strongly that the legislature intends that the threshold of proof shall be "clear and convincing."

In my view, the plain wording of the statute requires a pretrial hearing, even before discovery, wherein the claimant shall establish a claim of willful, wanton or malicious conduct on the part of the party claimed against. The statute requires "clear and convincing" evidence that there is a "reasonable basis."

---

* Driscoll, *Statutory Restrictions on the Discovery and Trial of Punitive and Exemplary Damage Claims in South Dakota,* 33 S.D.L.Rev. 247, 251 (1988) (Driscoll, *Punitive Damages*).

My concurrence in result is based upon my firm judgment that the trial court was, in fact, clearly erroneous in its decision, even under the statutory standards, as I perceive them to be. This court has said that the technical meaning of "clear and convincing evidence" is:

'[T]he witnesses must be found to be credible, that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'

*Cromwell,* 81 S.D. at 329, 134 N.W.2d at 780 (citations omitted). There is no dispute in this record as to the events that occurred in the process of entering and taking possession of the dealership. The direction to the sheriff to break in the door, after First Bank's attorney, on the scene, acknowledged that Vreugdenhil had rights, satisfies in my view, and for the purposes of the pretrial hearing only, the burden of establishing clear and convincing evidence that the actions of First Bank were willful, as opposed to wanton as found by the majority.

I, too, would reverse the trial court's decision.