263 So.2d 690

**Robert HUNTER, alias**

v.

**STATE.**

**6 Div. 68.**

Court of Criminal Appeals of Alabama.

May 16, 1972.

Rehearing Denied June 13, 1972.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

Beddow, Embry & Beddow, and Thomas M. Haas, Mobile, for appellant.

ALMON, Judge.

Robert Hunter was convicted of murder in the second degree and sentenced to fifty years and one day in the penitentiary.

The evidence showed that the defendant fatally wounded Gordon Smith outside the home of the deceased on March 19, 1967, by shooting him with a rifle. This incident occurred after an argument between the defendant and the deceased over whether the defendant had followed the deceased's wife home. According to the testimony of the deceased's wife, Wanda Jane Smith, the defendant had followed her home on this occasion and had parked his automobile in front of the Smith home. Upon entering the house she advised her husband of what had happened. The deceased armed himself with a pistol and drove his automobile down the driveway to a point near the defendant's automobile. An argument ensued which led to the fatal shooting.

The defendant denied following Mrs. Smith and testified further that he did not know her or the deceased. He stated he was looking for a man named Ray Smith who lived across the street. and that his purpose in being there was to find Ray

Smith and "whip" him. The defendant and Ray Smith had had an argument earlier that day. The defendant testified he was looking for Ray Smith when the deceased accused him of following his wife. An argument ensued and, according to the defendant, the deceased shot at him and later he fired in self-defense. Ray Smith and the deceased were brothers.

The defendant complains that questions propounded to him on cross-examination and statements made by the special prosecutor in the presence of the jury and the trial judge's rulings thereon constituted reversible error. We agree.

The portion of the record in question is as follows:

"Q. And your statement is you were going to find him [Ray Smith] to whip him, is that right?

"A. That is correct.

"Q. And this rifle was in your car, was it not, when you went, all this time you were looking for him, too, it was there?

"A. I did not know it.

"Q. You had used that rifle before to shoot at another car, hadn't you?

"MR. CROWNOVER: We object to that.

"THE COURT: What was his answer to that? He did not know it was in there?

"MR. McDUFFIE: Yes, sir, he claimed he did not know it was in there, and I think that opens up that he had used that identical rifle to shoot at another car, but still, he didn't know it was in there.

"THE COURT: When?

"MR. McDUFFIE: When?

"MR. LACKEY: It was before this time.

"THE COURT: Oh, it was prior to this time.

"MR. LACKEY: Yes, sir, a time prior to this.

"MR. McDUFFIE: Your Honor let him prove the custom, and the rifle being there, and about his mother, and so on, but he did not know it was in there, but it was a time prior to this.

"THE COURT: Well, how long prior?

"MR. CROWNOVER: We object, your Honor.

"THE COURT: I sustain the objection.

"MR. CROWNOVER: They are talking about a circumstance not in the trial of the case.

"THE COURT: Gentlemen, lets don't talk to each other so much. If you want to say anything to the court, make it short but say what you want to, to the court.

"Q. I will ask you this: If you had shot this rifle prior to the time that you killed Mr. Smith?

"MR. CROWNOVER: We object, Your Honor.

"THE COURT: I sustain the objection.

"Q. How often had you seen that rifle in the back of the car?

"A. Not too many times.

"Q. Well, let me ask you this: How long had you been driving that car?

"A. On and off.

"Q. Well, give us some judgment, please, sir.

"A. I maybe drive it once or twice a week, maybe mine got tore up, or something.

"Q. Were you driving it April 16, 1966?

"MR. CROWNOVER: We object, Your Honor. What has April 16, 1966, got to do with it?

"MR. McDUFFIE: That he took that rifle out at somebody else.

"THE COURT: I will let him testify whether he drove it in April, 1966.

"Q. Were you driving that car April 17, 1966?

"A. I don't know whether I was or not.

"Q. What?

"A. I don't know whether I was or not.

"Q. At that time did you fire that rifle at another car?

"MR. CROWNOVER: We object, Your Honor.

"A. Did I do what?

"Q. Did you fire that rifle—

"MR. CROWNOVER: Just a minute. I object.

"THE COURT: He is establishing now whether he knew the gun was in the car, whether he knew it was there.

"MR. CROWNOVER: He is asking him if he fired the gun in April, 1966.

"MR. McDUFFIE: I am asking first was it there at the time.

"THE COURT: What was your answer to that?

"A. It may have been or not.

"Q. Do you know whether it was or not?

"A. It could have been.

"Q. Did you fire that rifle at that time?

"MR. CROWNOVER: We object to that.

"THE COURT: You mean fired at a car? You didn't mention fired at a car or somebody. He might have fired it out in the woods, I don't know.

"MR. McDUFFIE: Yes, sir, that he was driving the car, that the rifle was there, that it was loaded, and he took it and shot at another car, at another time.

"THE COURT: Mr. McDuffie, I have ruled that out. Do not bring that up.

"MR. CROWNOVER: I move for a mistrial.

"THE COURT: Do not consider that statement, gentlemen.

"MR. CROWNOVER: I move for a mistrial.

"MR. LACKEY: Judge, they tied this car together, they tied the rifle together. We are trying to find out where it was kept, how did he know it was there, how the rifle was caused to be in the car. He said it was there, he did not get it. Just trying to avoid other testimony that I was going to get out. If it was already in the car, it wasn't necessary. He has got to get the car and rifle together. We are trying to show whether prior to this it was fired at another, fired at some car, it had to be an earlier car; just trying to avoid problems.

"THE COURT: Mr. Lackey, I don't agree with you. I don't think you can go into that, how the gun got in the car. But I will permit you to tie the car together, and whether he shot at one another [sic].

"MR. LACKEY: It was one other.

"MR. CROWNOVER: We move for a mistrial.

"THE COURT: I overrule the motion for a mistrial.

"MR. CROWNOVER: We except.

"THE COURT: Do not consider the statement made by the solicitor or prosecutor, gentlemen. It was for the court.

"Q. Let me ask you this: had you ever shot this gun at the time you shot Mr. Smith?

"MR. CROWNOVER: We object, Your Honor.

"THE COURT: I overrule the objection.

"MR. McDUFFIE: You may answer.

"A. Yes, sir, I did.

"Q. Where did you get the rifle—I will ask you this: How many times and different occasions had you shot that rifle prior to the time that Mr. Smith was killed?

"MR. CROWNOVER: We object.

"THE COURT: Overruled.

"MR. CROWNOVER: We except.

"THE COURT: Answer.

"A. Twice.

"MR. CROWNOVER: May I state my grounds? We object on the grounds because it has no bearing as to shooting the deceased; it is totally irrelevant and immaterial to this inquiry; they are talking about completely two different times; they are two different parties, and somebody that Mr. McDuffie has drawn from air.

"MR. McDUFFIE: No, I haven't drawn

"THE COURT: Let him finish.

"MR. CROWNOVER: And I object on this ground, to going into an occasion back a year ago, and into how many times he had shot the gun in the past, and whether or not he had shot the gun in the past.

"THE COURT: I overrule the objection.

"MR. CROWNOVER: We except."

The defendant testified on cross-examination that he did not know the rifle used in the killing was in the back seat of the car he was driving. The State then, in an effort to rebut this testimony, attempted to show by the defendant that he used the same rifle to shoot at "another car" more than a year before the fatal shooting. Presumably the State's theory was to show the defendant's familiarity with the rifle and that he was in the habit of carrying this rifle with him. The trial judge sustained objections to these questions and informed the State's attorneys that he did not think this evidence was admissible. After repeated attempts by the special prosecutor to ask the defendant the identical question which the trial judge had previously ruled inadmissible and several statements in the presence of the jury as to why this evidence should be admitted, the trial judge apparently changed his ruling and permitted the State over defense objection to pursue this line of questioning.

Clearly, whether the defendant shot at a vehicle more than a year ago was irrelevant and highly prejudicial. Adams v. State, 18 Ala.App. 524, 93 So. 292.

The fact that the defendant denied having shot at some vehicle and testified that he had only fired the rifle twice while rabbit hunting did not cure the prejudicial effect of the special prosecutor's questions and statements before the jury and the trial judge's ruling thereon. We are of the opinion that this extraneous matter had the effect of unduly discrediting the defendant and thereby prejudiced the minds of the jury against him on account of past conduct totally unrelated to this occasion.

The judgment of conviction is therefore due to be reversed and the cause remanded for new trial.

Reversed and remanded.

PRICE, P. J., and CATES, TYSON and HARRIS, JJ., concur.