325 So.2d 917

**Robert HUNTER, alias**

v.

**STATE.**

**6 Div. 646.**

Court of Criminal Appeals of Alabama.

June 30, 1975.

Rehearing Denied July 29, 1975.

Roderick Beddow, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Second degree murder: sentence, fifty years and one day imprisonment.

The appellant was convicted of second degree murder in 1967. This Court reversed and remanded. *Hunter v. State,* 48 Ala.App. 232, 263 So.2d 690 (1972). The appellant was retried, convicted again of second degree murder and again has appealed.

Mrs. Wanda Smith Tate, wife of the deceased, Gordon Smith, testified that the killing took place on March 19, 1967, around 9:30 p. m. She had just returned home from church when she was nearly forced off the road by an on-coming car which parked in front of her home as she drove into her carport. She immediately told her husband of the incident, and he drove their car down the driveway to where the other automobile was parked. Mrs. Tate was then telephoning her sister-in-law who lived across the street. She then went down the driveway on foot,

heard a voice, not her husband's, cursing loudly, then heard one shot and ran to her wounded husband.

Mrs. Tate said she observed a person at the scene whom she had never before seen and identified him as the appellant. She said he ran to his automobile, "squeaked the tires and sped off." Her brother-in-law, Joe Beasley, and a neighbor, Hubert Sims, were at the scene when she reached her husband.

Dr. Joe W. O'Neal testified as to treating the deceased around 10:30 p. m. on the night in question. He testified that Mr. Smith died during the emergency treatment from a gunshot wound in the neck.

Joe Beasley testified that his wife was the sister of the deceased and that he was an eyewitness to the shooting. His wife received a telephone call from the wife of the deceased and went outside. He then went out also and went down the driveway to the road where two cars were sitting side by side with a pickup truck parked to the rear of one. Hubert Sims was in the truck. Mr. Smith was standing beside the truck talking to Mr. Sims.

The witness saw the appellant with a rifle in his hands approach the deceased. The witness said he told the appellant to put the gun up, and the appellant turned the gun on him saying, "You stay out of this you son of a bitch." He then observed Hunter walk up to the deceased, curse him and jab him three or four times with the rifle. He heard the deceased ask Hunter why he had followed his wife home, whereupon the appellant said he had not followed her, that he had come for the man across the street.

The witness said Hunter then cursed Smith again saying, "I think I'll just shoot you, you smart son of a bitch," whereupon he raised the rifle, aimed at Smith's neck and shot him. Hunter then turned, ran to his car and sped away.

The witness did not hear Smith curse Hunter. He only heard one shot. His

brother-in-law had a pistol in his hand when Hunter shot him with the rifle, but he did not see Smith raise the pistol at any time. The witness took the pistol to his home where he and his wife emptied the chambers. There were six chambers in the .38 caliber pistol, but only five cartridges and none had been fired. He put the pistol and cartridges in a sack, and his wife put them up. He did not tell the police about the pistol, nor give it to them.

Mrs. Madge Smith Beasley, sister of the deceased, was an eyewitness and saw the appellant shoot her brother. She testified to substantially the same facts as her husband.

Hubert Sims, a neighbor of the deceased, testified for the defense that as he was starting to work on the night in question, he stopped his pickup truck behind two cars which were blocking the road. Smith, the deceased, came back to his truck with what appeared to be a gun in his hand and said the man in the other car had followed his wife home and that, "he might have to kill him, or was going to kill him, or something like that." He did not remember the exact words Smith used.

He said the appellant then got out of his car with a .22 caliber rifle in hand and came back to where Smith was standing by the truck. There was an exchange of words, Hunter struck the deceased a couple of times with the rifle. He did not hear the deceased ever curse the appellant, nor did he see the deceased raise his pistol. He testified on cross examination that Hunter used words similar to the threat Joe Beasley testified that Hunter made to the deceased. The appellant then stepped back and shot Smith with the rifle. The witness only heard one shot fired.

The appellant, Robert Lee Hunter, testified in his own behalf. He said he was parked just above the Smith's driveway waiting on a man who lived across the street, when the deceased pulled up in another car and accused the appellant of following his wife home. Hunter denied it

and told him it was none of his business what he was doing there as it was a public street. Smith came around his car with a pistol, cursed Hunter, accusing him again of following his wife, and shot into his car.

The pickup truck then arrived, and the testimony is substantially the same as already set out, except that the appellant claims Smith raised his pistol, thereby causing the appellant to fire his rifle in self-defense.

The appellant went home, talked to his mother and a Mr. Gray and then drove to the Northport Police Station. His mother left the station in the car, at the request of the police, and returned with the rifle. Police officers searched the car at the station and were unable to find a bullet hole inside that night. The next morning, appellant's mother showed investigating officers a bullet hole in the car. She testified that she did not fire a shot into the car to make the hole. A ballistics expert identified the slug as a .38 caliber, but due to its condition, it was impossible to determine from which gun it was fired.

I

■ The appellant contends the trial court erred in refusing his requested charge number 22:

"Defendant's Requested Charge No. 22 I charge you, members of the jury, that while threats alone will not serve as a justification for homicide, if the jury believe from the evidence that the deceased, at the time of the homicide was manifesting an intention to carry such threats into execution, by a positive act then done, or, that from the acts of the deceased at the time of the homicide, it would have appeared to a reasonable mind, under the circumstances, that the deceased was attempting to execute the threats against the defendant, you may then consider the threats made by the deceased in justification of the homicide.

REFUSED Joseph A. Colquitt, JUDGE"

The appellant contends that he had a legal right to put before the jury for their consideration, the legal effect of a threat against his life made by the deceased. He contends the threat was made to him at his automobile and that the deceased's intent to carry out the threat was manifested by the deceased shooting a pistol into the appellant's automobile.

The deceased then walked back to a pickup truck which had just arrived and and began talking to witness Sims. The appellant, instead of retreating or leaving the scene, got a rifle from the back seat of his car, got out and came back to where the deceased was talking to Sims. The evidence establishes that the appellant there began to jab or hit at the deceased with the rifle and then shot and killed him. No witness, except the appellant, saw the deceased raise his pistol or make any threatening move toward the appellant at the time of the shooting. Likewise, no other witness heard more than the one shot which killed the deceased.

To have given the requested charge in question, would have given undue emphasis to a portion of the evidence. It would have given undue weight to the appellant's testimony, contrary to the testimony by witnesses who heard no threat made to the appellant and who saw no overt act on the part of the deceased to carry out the alleged threat.

While the charge, in another form, was given on behalf of the State in *Karr v. State*, 100 Ala. 4, 14 So. 851 (1893), the facts there are easily distinguishable from the instant case. The Court there held that under the evidence presented, the charge given at the request of the State was a correct legal principle, and the Court would not reverse the trial court for giving it.

In *Karr*, supra, the Court stated:

"The homicide which gave rise to this prosecution was perpetrated on August 28, 1892, and at the entrance of defendant's dwelling. There is no conflict in the testimony on these points. When shot down and killed, deceased was approaching the door of defendant's home with a gun in hand, though not raised, or put in position for shooting. There is testimony that deceased had made threats against the life of the accused, and that he was a man of violent and dangerous character . . . . ."

Assuming the deceased in the instant case did in fact threaten the appellant before Sims drove up, he immediately left the appellant and went to Sims' truck when it arrived at the scene. From that point on, it was the appellant who came toward the deceased and who exhibited threatening conduct toward the deceased. The facts here differ greatly from those set forth in *Karr*, supra. While the State's given charge in the *Karr* case may have been correct under the facts there, we believe such a charge in the instant case is not supported by the evidence, would over-emphasize the appellant's theory of the case, and would be misleading to the jury.

Considering the appellant's conduct, including his failure to retreat when he had the chance, we are of the opinion that proper instructions for the jury to have considered were those dealing with the law of self-defense covered in the trial court's oral charge and in given charge number 28 requested by the appellant. Title 7, § 273, Code of Alabama 1940.

II

The second contention of the appellant is that the trial court committed error in refusing his requested charge number 11:

"Defendant's Requested Charge No. 11
I charge you, members of the jury, that it is the duty of the State to prove every material fact charged in the indictment to a moral certainty and to satisfy the mind of the jury of the defendant's guilt beyond all reasonable doubt, and if the State has failed to do this, and the jury

can account for the defendant's innocence upon any reasonable hypothesis, in view of all the evidence, then the jury should find the defendant not guilty.

REFUSED Joseph A. Colquitt, JUDGE."

This charge was held good in *McAdory v. State,* 62 Ala. 154 (1878), and portions thereof were held good in *Mose v. State,* 36 Ala. 211 (1860) and *Joe v. State,* 38 Ala. 422 (1863). However, under the peculiar circumstances of this case, we feel the court properly refused the charge. It charges *inter alia,* that the State must, "prove every material fact *charged in the indictment . . . ."* (Emphasis supplied). The indictment charges murder in the first degree. Since, on a prior trial, the appellant had been convicted of murder in the second degree under the same indictment, he was no longer subject to conviction on the first degree charge. The trial court properly instructed the jury in this regard:

"Bu (sic) operation of law this indictment, in effect, is amended to read, 'but without premeditation and deliberation.' Therefore, this indictment charges the offenses of Murder in the Second Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree. There is no charge of Murder in the First Degree in this case, and you will not have a verdict form pertaining to Murder in the First Degree and you cannot render a verdict of Murder in the First Degree in any way in this case. It is just not an issue."

Thus, the requested charge in question would be misleading to the jury in view of the correct oral charge, supra, in that it in effect charges that the jury should acquit if the State failed to prove *every* material fact under the first degree indictment which, absent the court's oral instruction above, would include premeditation or deliberation. (See indictment forms 80 and 81, Title 15, § 259, Code of Alabama 1940.)

The Supreme Court of Alabama has held a similar charge to be bad in cases where the indictment includes offenses of differing degree. *Stoball v. State,* 116 Ala. 454, 23 So. 162 (1897); *Young v. State,* 149 Ala. 16, 43 So. 100 (1907); *Coats v. State,* 253 Ala. 290, 45 So.2d 35 (1950).

We are of the opinion that the trial court's oral charge properly instructed the jury regarding the burden of proof and reasonable doubt. Title 7, § 273, Code of Alabama 1940.

### III

■ The final proposition of law in the appellant's brief claims error on the part of the trial court for refusing requested charge number 16:

"Defendant's Requested Charge No. 16 I charge you, members of the jury, that the defendant cannot be convicted of murder in the second degree unless he inflicted an act of violence upon the deceased which produced his death, and at the time he inflicted such act of violence he had the *intention* to kill the deceased.

REFUSED Joseph A. Colquitt, JUDGE"

The trial court charged the jury, on record page 296, in part as follows:

" . . . In order to convict a person of Murder in the Second Degree, you must be satisfied from the evidence beyond a reasonable doubt and to a moral certainty that that person killed another and *he did so willfully* and maliciously . . . ." (Emphasis supplied)

The trial court went on to give a detailed definition of "willful" and "malice." Title 7, § 273, supra, does not require that a correct statement of the law be given in a requested charge if it is substantially and fairly covered in either the trial court's oral charge or in requested charges given. We are of the opinion that the above emphasized portion of the court's oral charge fairly and substantially covers the matter contained in refused charge number 16.

The trial court, by using the term "willfully or maliciously" could have phrased the proposition no better by using the words

"intentionally or with malice" since both phrases have the identical meaning. "Willful" and "intentional" are synonymous. See: *Webster's Third New International Dictionary; Black's Law Dictionary* (4th ed. 1951); and, *Words and Phrases,* Volume 22, "Intentional," and Volume 45, "Willful," and innumerable cases cited therein.

Affirmed.

All the Judges concur.