Dewey DAHL and Lavonne Dahl,
Plaintiffs and Appellants,

v.

Peter SITTNER and Sittner Real Estate,
Inc., Defendants and Appellees.

No. 17004.

Supreme Court of South Dakota.

Argued Oct. 22, 1990.

Decided Aug. 28, 1991.

Patrick M. Ginsbach, Farrell, Farrell & Ginsbach, Hot Springs, Rodney C. Lefholz, Rapid City, for plaintiffs and appellants.

Dale Morman, Morman, Smit, Shepard and Hughes, Sturgis, Jack Von Wald, Selby, for defendants and appellees.

HENDERSON, Justice (on reassignment).

## PROCEDURAL HISTORY/ISSUES

Dewey Dahl (Dewey) and Lavonne Dahl (collectively referred to as Dahls) appeal from a pretrial order striking from their complaint a claim for punitive damages against Peter Sittner and Sittner Real Estate, Inc., (collectively referred to as Sittner). In October 1985, Dahls brought an action for consequential and punitive damages against Sittner alleging, in one count, fraud and misrepresentation in connection with a real estate listing for the sale of Dahls' ranch. We fully detailed the facts giving rise to this action in *Dahl v. Sittner*, 429 N.W.2d 458 (S.D.1988) (*Dahl I*) wherein we reversed the trial court's order granting summary judgment to Sittner. This appeal only involves Dahls' claim for punitive damages. The Dahls raise three issues on appeal:

1. Is SDCL 21-1-4.1 applicable to claims for punitive damages based on fraud and deceit? We hold that it is.

2. Is SDCL 21-1-4.1 applicable to claims for punitive damages brought prior to July 1, 1986? We hold that it is.

3. Did the trial court err in ruling that SDCL 21-1-4.1 precludes Dahls from seeking punitive damages against Sittner and Sittner Real Estate? We hold that it did.

Affirmed in part, reversed in part and remanded.

## FACTS

The facts pertinent to this claim concern the legal relationship between Sittner and Donna Klock (Klock), a real estate broker licensed in Minnesota but not South Dakota. On February 20, 1980, Sittner entered into a written agreement with Donna Klock. Under this agreement, Klock was to solicit prospective purchasers from Minnesota, present them to Sittner, and Sittner would then show the properties to the potential buyers. If a buyer produced by Klock purchased property listed with Sittner, Klock would receive forty percent of the sale commission. On July 7, 1980, Sittner canceled the agreement, but Klock persuaded Sittner to renew the agreement on December 4, 1980.

Sittner introduced Klock to the Dahls during the period covered by the first agreement. Subsequent to the commencement of the second agreement, Klock contacted Dahls directly and attempted to arrange a sale of their property. In addition to bringing prospective purchasers to Dahls' property, Klock also forged Sittner's signature on a listing agreement, and prepared an offer to purchase Dahls' land on Sittner Real Estate letterhead. In early March 1982, Klock assured Dahls that she would have their property sold by March 15, and persuaded them to contract with Duane Harter (Harter) to auction off both their real and personal property on that date. Three or four days before the sale date, Sittner learned of the auction when he saw a published auction sale bill. Sittner was not aware of Klock's involvement in the sale, or that Klock had allegedly secured a purchaser. Sittner did not contact anyone regarding the auction because the exclusive listing agreement guaranteed his commission on the sale of the ranch regardless of how it was sold, and because he had no involvement in the personal property sale.

On March 15, 1982, immediately prior to the auction sale, Klock assured Dahls that the land had been sold, a contract had been signed, and that $10,000 cash in earnest money had been placed in escrow in a local bank. Relying on Klock's representation that the real property had been sold, Dahls allowed the auction to proceed, first by selling off all their equipment and livestock. After all the personal property was sold, the land was offered for sale. However, the ranch was not sold at auction. Despite Dahls' insistence, Klock did not show them the written offer to purchase until a few days after the auction. It was at this time that Dahls discovered that a promissory note, not money, had been placed in escrow. In addition, Dahls found the terms of this offer unacceptable. Dahls were left in a tenuous position: They still had their ranch but no machinery or livestock to make use of the land.

In October 1985, Dahls commenced this action against Sittner and Sittner Real Estate.[1] The trial court granted summary judgment to Sittner and we reversed. *Dahl I*, 429 N.W.2d 458. On remand, the trial court conducted a pretrial hearing on Dahls' punitive damages claim pursuant to SDCL 21-1-4.1. The court determined that Sittner and Sittner Real Estate were not liable for punitive damages and entered an order striking the punitive damages claim from Dahls' complaint. We granted Dahls' petition for an intermediate appeal.

### Standard of Review

■ The issues raised by this appeal involve the interpretation of SDCL 21-1-4.1. The proper construction to be given a statute is a question of law which is fully reviewable. *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240, 242 (S.D.1989); *Border States Paving v. Department of Revenue*, 437 N.W.2d 872, 874 (S.D.1989). Accordingly, the questions presented are reviewed de novo. *Reid, supra; Border States Paving, supra.*

### DECISION

I. *SDCL 21-1-4.1 is applicable to claims for punitive damages based upon fraud and deceit.*

■ Dahls contend that SDCL 21-1-4.1 does not apply to punitive damage

---

1. Klock was deceased at the time suit was commenced.

claims based on oppression, fraud, or intentional conduct, as opposed to the "willful, wanton or malicious conduct" specifically referred to in the statute. Claims for punitive damages are prohibited in this state unless expressly authorized by statute. SDCL 21–1–4. Dahls' claim against Sittner for punitive damages is authorized by SDCL 21–3–2 which provides, in pertinent part:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, ... the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

This statute limits punitive damages to cases in which oppression, fraud, or malice is claimed. *Groseth Intern. v. Tenneco, Inc.,* 440 N.W.2d 276, 279 (S.D.1989); *Mathews v. Twin City Const. Co.,* 357 N.W.2d 500 (S.D.1984). *See Till v. Bennett,* 281 N.W.2d 276, 279 (S.D.1979) (dicta); *Stugelmayer v. Ulmer,* 260 N.W.2d 236, 240 (S.D.1977) (dicta). *See also Hannahs v. Noah,* 83 S.D. 296, 303, 158 N.W.2d 678, 682 (1968); Driscoll, *Statutory Restrictions on the Discovery and Trial of Punitive and Exemplary Damage Claims in South Dakota,* 33 S.D.L.Rev. 247 (1988). Malice is an essential element of a claim for punitive damages, however, malice sufficient to support exemplary damages may be either actual, malice in fact, or presumed, legal malice. Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Malice is so defined in *Gamble v. Keyes,* 43 S.D. 245, 178 N.W. 870, 872 (1920). Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts. *Hannahs,* 83 S.D. at 303, 158 N.W.2d at 682; 52 Am.Jur.2d § 2, P 163. Thus, while the person may not act out of hatred or ill-will, malice may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other. *Id.* In this context, however, we have said:

> Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations.

*Id.* 83 S.D. at 303, 158 N.W.2d at 682.

In construing SDCL 21–1–4.1 and 21–3–2 together, we equate the "willful, wanton" language of the former with the presumed, legal malice of the latter and the "malicious" language of the former with the actual malice of the latter.

Dahls next contend that the statute's requirement of a preliminary showing of "willful, wanton or malicious conduct" imposes a greater burden on plaintiffs claiming punitive damages based on fraud than would otherwise exist absent this statute. Dahls' argument is premised on the mistaken assumption that a punitive damages claim based on fraud does not require as one of its elements a showing that the conduct was willful, wanton, or malicious. As noted above, all punitive damages claims require a showing of either actual or presumed malice. Further, as stated in *Northwest Realty Co. v. Colling,* 82 S.D. 421, 433, 147 N.W.2d 675, 683 (1967), the essential elements of fraud are:

> [T]hat a representation was made as a statement of fact, which was untrue and *known to be untrue by the party making it, or else recklessly made;* that it was made *with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he [or she] did in fact rely on it and was induced thereby to act to his [or her] injury or damage.

(Citations omitted; emphasis added). By definition, then, fraud involves "intentional" or "reckless" conduct. The term "intentional" is synonymous with "willful." *Hunter v. State,* 57 Ala.App. 50, 325 So.2d 917, 921 (1975); *Jackson v. Edwards,* 144 Fla. 187, 197 So. 833 (1940); Black's Law Dictionary 948 (4th ed.1968). Likewise, "reckless" is synonymous with "wanton." *Lipscomb v. News Star World Pub. Corp.,* 5 So.2d 41, 45 (La.App.1941); *Commonwealth v. Welansky,* 316 Mass. 383, 55 N.E.2d 902, 910 (1944); Black's Law Dictio-

nary 1435 (4th ed.1968). Thus, SDCL 21–1–4.1 does not impose an additional burden by requiring that a party claiming punitive damages first demonstrate a "reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against."

Further, SDCL 21–1–4.1 employs the disjunctive form: "willful, wanton, *or* malicious conduct." (Emphasis added). Punitive damage claimants are required only to demonstrate either willful or wanton or malicious conduct. The statute does not require evidence of actual malice before any punitive damages issue can be submitted to the fact finder. The statute may be satisfied by establishing presumed malice ("willful, wanton") or actual malice ("malicious"). *See, Yankton Production Credit v. Jensen,* 416 N.W.2d 860, 863 (S.D.1987); *Hunter v. Hagen,* 672 F.Supp. 426, 428 (D.S.D.1987). Therefore, we affirm the trial court on this issue.

II. *SDCL 21–1–4.1 is applicable to claims for punitive damages brought prior to July 1, 1986.*

Dahls next issue questions the retroactive application of the statute. They argue that SDCL 21–1–4.1 does not apply here because their claim arose, and this action was commenced, prior to the enactment of the statute. The first question, however, is whether this issue is properly before the court on appeal, since issues will not be reviewed on appeal unless properly preserved before the trial court. *Till,* 281 N.W.2d at 278. Sittner contends that the question of the statute being retroactively applied was not raised on remand, and that the trial court was never afforded an opportunity to consider the issue.

The issue was raised in the trial court in 1987 in Dahls' motion to allow evidence concerning defendants' net worth and Dahls' accompanying brief. Sittner responded to Dahls' contention that SDCL 21–1–4.1 should not apply because it was enacted after commencement of this action by submitting a pretrial brief on legal questions. The trial court did not rule on this motion prior to Dahls' first appeal. On remand, Dahls' motion was listed as pending in Sittner's pretrial conference checklist filed on October 17, 1989. Although the trial court did not expressly deny this motion, it is clear that the issue was raised below, and that by implication the motion was denied. In this case, where Dahls appeal the order entered on the hearing pursuant to SDCL 21–1–4.1, they have properly preserved this issue for appeal.

■ Turning to the merits of the applicability of SDCL 21–1–4.1 to an action commenced prior to the enactment of the statute, Dahls argue that the statute cannot be applied retroactively. The general rule is that newly enacted statutes will not be given a retroactive effect unless such an intention is plainly expressed by the legislature. SDCL 2–14–21; *Schmaltz v. Nissen,* 431 N.W.2d 657 (S.D.1988); *Sheehan v. United Pacific Ins. Co.,* 439 N.W.2d 117 (S.D.1989). However, statutes which affect only procedural matters, as opposed to substantive rights, are given retroactive effect. *Lyons v. Lederle Laboratories,* 440 N.W.2d 769, 770 (S.D.1989) (citing *Brookings County v. Sayre,* 53 S.D. 350, 220 N.W. 918 (1928) and *Simpson v. Tobin,* 367 N.W.2d 757 (S.D.1985)). Where a new statute deals only with procedure, it applies to all actions, including those which have already accrued or are pending, as well as those which arise after enactment of the statute. 2 N. Singer, Sutherland Statutes and Statutory Construction §§ 41.04, 41.09 (Sands 4th ed.1986).

■ Whether SDCL 21–1–4.1 may be applied retrospectively depends upon the statute being procedural or substantive in nature. First, the statute regulates discovery relating to claims for punitive or exemplary damages by requiring that the claimant first establish a reasonable basis to believe that the party claimed against committed acts which would give rise to punitive damages. This statute also requires that the claimant establish a reasonable basis for the claim before the issue of punitive damages may be submitted to the finder of fact. The purpose of the statute is to prevent the use of claims for punitive damages as a means of harassment, by estab-

lishing a threshold to insure that there is a reasonable basis for such claims. Driscoll, *Statutory Restrictions on the Discovery and Trial of Punitive and Exemplary Damage Claims in South Dakota*, 33 S.D.L.Rev. at 251.

■ The statute does not alter the standard of proof required to recover on a punitive damages claim. *Flockhart v. Wyant*, 467 N.W.2d 473 (S.D.1991). At trial, a plaintiff must still demonstrate by a preponderance of the evidence that he or she is entitled to punitive damages. *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 125 (S.D.1977). A clear and convincing standard applies only to determine if there is a reasonable basis to believe that the conduct of the party claimed against was willful, wanton or malicious. *Flockhart, supra.* Thus, the statute leaves unchanged the substantive nature of the availability of punitive damages. SDCL 21-1-4.1 only affects the procedures involved in obtaining discovery regarding punitive damages and submitting the claim to the finder of fact. It is a procedural statute. Accordingly, it is to be enforced in all cases existing prior to, as well as subsequent to, its enactment. *Lyons*, 440 N.W.2d at 770; 2 N. Singer, Sutherland Statutes and Statutory Construction § 41.04 (Sands 4th ed.1986). Cases pending at the time SDCL 21-1-4.1 went into effect are affected in relation to future proceedings from the time when the new statute went into effect. Thus, it was proper for the trial court to apply the statute retroactively.

Dahls contend that even if the court rejects their retroactivity argument, the statute should not apply because it is unconstitutional. Dahls argue that the statute violates the equal protection guarantees of the federal and state constitutions. They contend the statute arbitrarily classifies parties raising punitive damages claims by dividing them into classes, i.e., those basing their claims on "oppression, fraud and intentionally committed acts," as contrasted to those basing their claims on "malice, or willful and wanton misconduct in disregard of humanity." *See*, SDCL 21-3-2.

As noted above, the statute applies to all punitive damages claims. The applicability of SDCL 21-1-4.1 does not vary according to the basis for the claim; it applies to *any* claim whether based on actual or implied malice. Because the statute does not create a classification, there can be no equal protection violation.

III. *The trial court erred in ruling that SDCL 21-1-4.1 precludes the Dahls from seeking punitive damages against Sittner and Sittner Real Estate.*

Finally, Dahls challenge the trial court's decision under the provisions of the statute. Their claim of error in this regard rests on the trial court's determination that the Restatement Rules[2] apply, rather than the doctrine of respondeat superior, in determining whether Sittner could be liable for punitive damages based on the acts of Klock.

■ This appeal requires that we determine the proper circumstances by which a principal is liable for punitive damages for the fraudulent acts of an agent. In regard to claims for punitive damages against a principal for acts of his or her agent, there are two theories of recovery: the scope of employment rule, and the complicity rule. *Briner v. Hyslop*, 337 N.W.2d 858, 861 (Iowa 1983) (thorough analysis of the two theories in the context of corporate employer responsibility for willful act of employee). The respondeat superior approach "holds the employer liable for punitive damages whenever the employee's actions within the scope of employment make the employee liable." *Id.* (citing *Stroud v. Denny's Restaurant, Inc.*, 271 Or. 430, 532 P.2d 790 (1975)). In *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509 (8th Cir.1984), the court held that the principal's liability for the agent's fraudulent conduct exists even if the principal had no knowl-

**2.** Restatement (Second) of Agency § 217C (1957) and Restatement (Second) of Torts § 909 (1977).

edge of the agent's wrongful conduct. In so holding, however, the Eighth Circuit relied on federal cases addressing the issue and did not rely on any South Dakota cases in reversing the decision of the federal district court in South Dakota. Accordingly, while the decision in *Rosebud Sioux Tribe* is instructive, it does not bind this Court on a matter of state law.

The second, more conservative approach is the complicity rule which requires an element of knowledge on behalf of the principal before imposing liability. The Restatement (Second) of Agency § 217C (1957) and the Restatement (Second) of Torts § 909 (1977), in nearly identical provisions, set forth this approach:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
>   (a) the principal or a managerial agent authorized the doing and the manner of the act, or
>
>   (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
>
>   (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
>   (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909. We note the states are almost evenly divided on which rule is followed. *Briner*, 337 N.W.2d at 864–65. It was for this reason that the Iowa Supreme Court examined the justifications for the competing rules:

> Punishment is a valid justification for punitive damages where the corporation is at fault, but with the course of employment rule, the one punished may be without fault and would be held liable merely on the basis of its role as employer. Thus, the major justification for the course of employment rule must be deterrence. Even though it may be argued that this goal of deterrence is adequately met by the threat of compensatory damages, we will assume that punitive damages are needed to deter undesirable con-

duct. It is obvious, however, that there can be no effective deterrence unless there is some conduct which can be deterred. Thus, if an employer is only vicariously liable and could have done nothing to prevent the misconduct of its employee, it seems of little value to award punitive damages against the employer.

*Briner*, 337 N.W.2d at 865–66 (citation omitted).

> This distinction is recognized by the complicity rule which in assessing punitive damages for reckless hiring or retaining of an unfit employee provides an incentive for taking care in selecting and training personnel.

> .    .    .    .    .

> [T]he complicity rule extends employer liability to employee conduct which it would be difficult to show was authorized, but for which the employer is at least partially blamesworthy [sic] because he employed an unfit person. The rule, as Professor Morris stated, "wisely protects corporations from vicarious liability for punitive damages when a properly supervised and disciplined employee acts outrageously; and it wisely allows for punitive damage awards against some corporations whose institutional conscience should be aroused."

*Briner*, 337 N.W.2d at 866 (citations omitted). The complicity rule of the Restatement was adopted by the *Briner* court because it is more consistent with the purpose of punitive damages. *Id.* at 867. We believe the complicity rule to be the better approach, and adopt the rule of the Restatement as the standard as to when punitive damages may be awarded against a principal for acts of his or her agent.

■■■ Our final question is: Was the trial court's application of the Restatement rule to the facts of this case proper? Issues involving the trial court's application of the law are fully reviewable. *See Reid*, 449 N.W.2d at 242; *Border States Paving*, 437 N.W.2d at 874. The trial court's decision was properly based on the Restatement complicity rule. The court analyzed separately each of the four alternatives of

the rule, and made the following conclusion:

That the Defendants are not liable for punitive damages of the acts of Donna Klock on an agency theory as:

(1) That Sittner did not authorize Klock's activities as such were entirely unknown to him at the time;

(2) That Sittner was justified in concluding that Klock was not an unfit person;

(3) That Klock was not employed in a managerial capacity under her agreement with Sittner and was not acting within the scope of her employment in persuading the Dahls to continue with the auction sale of personal property;

(4) That the actions of Sittner after the auction sale in attempting to sell Plaintiffs' property does [sic] not constitute ratification by Sittner of Klock's actions.

Thus, the specific issue remaining is whether Dahls established by clear and convincing evidence a reasonable basis for the trial court to believe that willful, wanton or malicious conduct on the part of Sittner himself was sufficient to impose liability for punitive damages against him. We believe they have. The facts of this case do not support that "Sittner was justified in concluding that Klock was not an unfit person;" rather, the facts appear to preponderate that Sittner was reckless in employing Klock. Under SDCL 21–1–4.1, clear and convincing evidence exists as to whether there was a reasonable basis to believe that fraud had been committed and that Sittner acted, in complicity, in perpetrating this fraud. The apparent fraud was that there was a supposed $10,000.00 earnest money payment; it was, in reality, a $10,000.00 promissory note. Klock used Sittner's stationery and Sittner's office to perpetrate this apparent fraud. Therefore, genuine issues of material fact exist as to whether:

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him/her, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Agency § 217C (1957); Restatement (Second) of Torts § 909 (1977). These are questions for the jury, not the court. *See, Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

Affirmed in part, reversed in part and remanded.

MILLER, C.J., and WUEST, J., concur.

SABERS, J., concurs specially.

AMUNDSON, J., not having been a member of the court at the time this case was argued, did not participate.

SABERS, Justice (concurring specially).

I write specially to point out that, despite the statement to the contrary by the majority opinion, the trial court's decision was *not* "properly" based on the "Restatement complicity rule." I also take issue with the majority's language that:

The facts of this case do not support that 'Sittner was justified in concluding that Klock was not an unfit person;' rather, the facts appear to preponderate that Sittner was reckless in employing Klock.

This language appears to improperly apply the wrong test. The test is whether genuine issues of material fact exist. They do exist. See, *Wilson*, 157 N.W.2d at 21. The majority even says so in the very same paragraph. As correctly stated therein, it is "for the jury, not the court," *or this court* to "conclude" whether or not the facts "appear to preponderate" on Klock's fitness or Sittner's recklessness.